**AFFIRM; and Opinion Filed July 13, 2016.**



In The

# Court of Appeals
## Fifth District of Texas at Dallas

### No. 05-14-01427-CR

**BERTHA MANCILLA, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 283rd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F-1324729-T**

## MEMORANDUM OPINION
Before Justices Lang, Lang-Miers, and Brown
Opinion by Justice Brown

Following a jury trial, Bertha Mancilla appeals her conviction for possession with intent to deliver cocaine. In four issues, she contends the evidence is legally insufficient to support her conviction and that the trial court erred in denying her motion to suppress. We affirm the trial court's judgment.

### BACKGROUND

Appellant was indicted for the offense of possession with intent to deliver cocaine in an amount of four grams or more, but less than 200 grams. Although no written motion to suppress appears in the record, the trial court held a hearing on the issue of whether to suppress evidence obtained in a warrantless search of appellant's home. At the hearing, Garland Police Officer Craig Dockter testified that on June 26, 2013, a citizen on the street flagged him down to talk to him about traffic coming and going from a particular house. The citizen was concerned about

drug use. Dockter checked the address in the police database and found that police had received two or three phone calls about the location with concerns about the presence of drugs or drugs sales at the house. One of the calls indicated that the husband had been arrested for selling drugs and that his wife was now selling for him.

Officer Dockter contacted another officer, Officer T.G. Franey, who joined him to conduct a "knock and talk" at the house. Three children were in the front yard. Officer Dockter asked them if their parents were home. The oldest child, who was eleven, told the officers to follow her to the backyard. She led them to the back porch and tried to open the door, but it was locked. The child knocked on the door. Dockter could see a man, later identified as Israel Rodriguez, sitting inside. Rodriguez opened the door, and Dockter asked him if it was alright for them to come inside. Rodriguez said, "yes" and allowed them in the house. Rodriguez told police he lived at the house and pointed out his bedroom. Officer Dockter described the house as "relatively small."

The officers asked the kids to get their mother. When she did not appear, police asked the kids again to go get her. Dockter heard the youngest child calling "police" in Spanish. Rodriguez had initially been calm, but became increasingly nervous and jittery as they waited for the woman. After several minutes, the mother, appellant, came out of her bedroom to talk to them. Dockter stated that the fact she took so long to come out raised "alarms" that she was hiding, destroying evidence, or retrieving weapons. Using the oldest child as a translator, Officer Dockter explained the drug complaints police had gotten and asked for consent to search. Appellant started nodding and then said "si." Dockter stated he used the child as an intermediary but appellant understood what he was saying in English.

Officer Dockter did a cursory search. He went into appellant's bedroom and then her bathroom. On the bathroom floor he found some prescription bottles lying open and a piece of

crack cocaine near the toilet. That indicated to him that appellant had flushed drugs. The open bottles contained cocaine residue and had the odor of cocaine. Officer Dockter also saw a couple of torn baggies and a package of new baggies. He stopped searching and called for a Spanish speaking officer to reconfirm that it was a consensual search. Officer Richard Maldonado responded. He spoke to appellant and Rodriguez, and they both granted consent again. Dockter resumed his search.

Officer Maldonado also testified at the suppression hearing. He stated that when he arrived, Officer Dockter told him he would like for him to translate and make sure that everybody understood what was taking place and that consent was voluntarily given. Maldonado spoke to appellant and Rodriguez separately in Spanish. They both acknowledged they understood what was taking place and understood they had consented. They did not withdraw their consent.

The defense offered into evidence records from the Garland Independent School District concerning the oldest daughter. The documents reflected that the child had a mild language impairment and mental retardation. Defense counsel argued that the consent to search was invalid because it was given through "an 11-year-old retarded child with a speech impediment." The trial court took the motion to suppress under advisement and later denied it.[1]

Officer Dockter testified again at trial. When he first entered the house, he waited in the living room. He could see where the kids went to find their mother. There was one bedroom down that hallway and that is where the kids went and from where they returned. The children told the officer their mother was in the bathroom. Several minutes, less than ten, went by before appellant appeared. After appellant gave her consent to search, Officer Dockter went into the

---

[1] Although the trial court's ruling denying the motion to suppress does not appear in the appellate record, it is apparent the motion was denied because the case proceeded to a jury trial and when appellant reurged her motion to suppress during trial, the court stated it would stay with its earlier ruling and deny the motion.

bedroom. He heard the water running in the toilet, so he went into the bathroom. He found the pill bottles, torn baggies, and piece of crack cocaine on the floor.

Officer Dockter testified about other items he found in appellant's bathroom when he resumed searching after Officer Maldonado spoke to appellant. Dockter found a sock in the bathtub. The sock was underneath the down spout and was wet; water was still coming out of the faucet. Dockter testified the water either was not turned off or there was a leak. The sock contained thirty rocks of crack cocaine individually wrapped in foil. The officer took the rocks out of the foil to separate them from the moisture and prevent them from being destroyed. The sock also contained more than 100 clear plastic baggies of powder cocaine. The way they were packaged indicated to Dockter that they were not for personal use. Dockter testified that water is not good for cocaine and will dilute it. Dockter testified that Exhibit 19 contained items found in the bathroom at appellant's house.

Officer Dockter further testified that Dallas County Appraisal District records named appellant as the owner of the house. A City of Garland utility bill in appellant's name for the address in question was admitted into evidence.

Officer Franey also testified about the events of June 23, 2013. He stated they waited five to ten minutes for appellant to come out of the bathroom. After appellant appeared, her daughter explained why the officers were there. Appellant shook her head and said "si," giving the officers consent to search. Officer Maldonado later told Franey that appellant gave consent to him in Spanish. Officer Franey waited with Rodriguez while Officer Dockter went back to the bedroom and bathroom area with appellant and the oldest daughter. According to Franey, when Officer Dockter showed appellant what he had found in the bathroom, appellant had no reaction.

Daniel Hauser, a forensic scientist for the Texas Department of Public Safety Crime Lab, analyzed the contents of an envelope admitted into evidence as State's Exhibit 19. Hauser's

report was admitted into evidence as well. Hauser testified that the evidence came to him in a 6 x 9 envelope and inside that envelope were three bags. One, which he referred to as "01-02," contained 1.66 grams of crack cocaine. Another, which he referred to as "01-01," contained eight ziplock bags of white powder. Hauser testified he did not analyze those baggies due to a backlog in his laboratory. He explained that, to save time, his lab tests items to achieve the highest penalty group it can and then does no further analysis. The third bag that was part of Exhibit 19 contained two other bags, which Hauser labelled as "01-03-AA" and "01-03-AB." His report indicated that "01-03-AA" contained seventeen ziplock bags of white powder and that "01-03-AB" contained eighty-five ziplock bags of white powder. Hauser testified that the substance inside those baggies appeared similar to that inside the baggies labelled as "01-01." Hauser analyzed the contents of "01-03-AA" and testified that they contained powder cocaine weighing 4.42 grams. He did not analyze the eighty-five baggies labelled as "01-03-AB." He indicated that if he had analyzed the substance in those bags as well as in the eight bags referred to as "01-01," and they were the exact same substance, there would be "a far greater number in grams."

Steven Junker, a narcotics detective with the Irving Police Department, testified as an expert for the State on the drug trade. The State gave him a hypothetical that matched the facts of this case. Junker concluded that the facts showed possession with intent to deliver. Junker said the drugs were individually packaged, ready for sale. According to Junker, the street value of the powder cocaine was just over $2,000 and the street value of the crack cocaine was $150. He explained that the torn baggies were probably ripped open to dispose of the loose powder in the toilet.

Maria Chacon testified for the defense. She had known appellant for twelve years and had visited her home. Chacon testified appellant's house had two bathrooms, one in front of the living room and one in appellant's bedroom.

Appellant testified through a translator. She testified that she used to rent a room to Rodriguez. On June 26, 2013, her daughters were playing outside and she went to take a shower. When she got out of the shower, the police were inside her house and one was at the door to her bathroom. She got dressed and came out to the living room. Another officer was present. She testified they ignored her and were "going around on the inside" of her house. She did not give them permission to come in and look around. She told them she did not speak English. According to appellant, she did not go back to the bedroom with the officer and her oldest daughter. She testified that a Spanish speaking officer came to talk to her. He did not ask her if she gave the others permission to go through her house. She told him she needed the officers to bring her some sort of permission to come into her house, and he told her they did not need any kind of permission. Appellant testified that she was innocent. She stated she was never in care, custody, or control of the controlled substances, and that the substances were never in her bedroom or bathroom.

The jury found appellant guilty as charged and assessed her punishment at ten years' confinement and a $10,000 fine. The jury recommended probation. Accordingly, the trial court suspended the imposition of the sentence and placed appellant on probation for ten years. This appeal followed.

**SUFFICIENCY OF THE EVIDENCE**

In her first issue, appellant contends the evidence is legally insufficient to support her conviction. She specifically asserts the State failed to prove the quantity of the cocaine and failed to prove she possessed the contraband. We disagree.

In deciding whether evidence is sufficient to support a conviction, we must assess all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could find the essential elements of the offense beyond a reasonable doubt. *Poindexter v. State*, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005). To establish unlawful possession of a controlled substance with intent to deliver, the State must prove the defendant exercised custody, control, management, or care over the substance, intended to deliver it to another, and knew the substance possessed was contraband. *Parker v. State*, 192 S.W.3d 801, 805 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd); *see* TEX. HEALTH & SAFETY CODE ANN. §§ 481.002(38), 481.112(a) (West 2010 & Supp. 2015); *Blackman v. State*, 350 S.W.3d 588, 594 (Tex. Crim. App. 2011); *Poindexter*, 153 S.W.3d at 405. Factors which may circumstantially establish knowing possession include the defendant's proximity to and accessibility of the narcotic, whether the defendant owned or had the right to possess the place where the drugs were found, and whether the conduct of the defendant indicated a consciousness of guilt. *Evans v. State*, 202 S.W.3d 158, 162 n.12 (Tex. Crim. App. 2006). Further, evidence that a defendant attempted to destroy drug evidence suggests she possessed the drugs and was aware of their illegality. *Uranga v. State*, 247 S.W.3d 375, 381 (Tex. App.—Texarkana 2008), *aff'd on other grounds*, 330 S.W.3d 301 (Tex. Crim. App. 2010).

Here, the State presented evidence that appellant owned the house where the drugs were found. Appellant's daughters alerted appellant to the police presence in the house and told the officers their mother was in the bathroom. Officer Dockter indicated the kids went down a hallway to find their mother and there was only one bedroom down that hallway. The officers waited several minutes for appellant to appear from that bedroom. When police searched the bathroom attached to that bedroom, they found crack cocaine and powder cocaine. They also found evidence that someone had been attempting to destroy the drugs. That evidence included

torn baggies and a sock containing cocaine under running water in the bathtub. Appellant suggests the evidence is insufficient in part because Officers Dockter and Franey contradicted each other about where the contraband was found and how much was found. She does not describe the alleged inconsistencies or provide us with record references for them. The jury resolved any inconsistencies in favor of the verdict, and we defer to that determination. *See Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). Viewing the evidence in the light most favorable to the verdict, a rational trier of fact could have determined that appellant exercised care, custody, or control over the cocaine.

Appellant also argues that the State failed to plead and prove the quantity of cocaine. The indictment alleged that appellant possessed with intent to deliver four grams or more but less than 200 grams of cocaine. Hauser, the forensic scientist, analyzed the contents of State's Exhibit 19, an envelope which contained items found in appellant's bathroom. Hauser testified that the envelope contained 1.66 grams of crack cocaine and 4.42 grams of powder cocaine for a total of 6.08 grams of cocaine. The envelope contained many more baggies of a substance that also appeared to be powder cocaine. Hauser testified that the additional amount would not have changed the penalty group of the offense and therefore the substance in those baggies was not analyzed due to a backlog in the lab. Appellant seems to argue that the evidence is insufficient because she was convicted for possessing a substance that was not analyzed or weighed by Hauser. While the record reflects there was some drug evidence submitted to Hauser but not analyzed by him and possibly some evidence not submitted to him, the amount of cocaine he did analyze, 6.08 grams, supports appellant's conviction for possession with intent to deliver

between four and 200 grams.[2]  We conclude the evidence is legally sufficient to establish the amount of cocaine possessed.  We overrule appellant's first issue.

## MOTION TO SUPPRESS

Appellant raises three issues, issues two, three, and four, concerning the denial of her motion to suppress.  Appellant contends the trial court erred in denying the motion because:  (1) the officers did not have a warrant or probable cause to enter or search her house; (2) the officers did not have her unequivocal consent to enter the house; and (3) no exigent circumstances existed to justify a warrantless search.  We begin with appellant's third issue, listed second above, in which she contends the motion to suppress should have been granted because the officers did not have her consent to enter her house.  She maintains police had no reason to think Rodriguez had authority to provide consent to enter the residence.  Appellant did not make this argument in the trial court, however.  At the hearing on the motion to suppress, she argued instead that the officers did not have consent to enter the house because consent was given "through an 11-year-old retarded child with a speech impediment."  Appellant cannot show error in the trial court's denial of a motion to suppress based on a legal theory she did not present to the trial court.  *Wright v. State*, 401 S.W.3d 813, 822 (Tex. App.—Houston [14th Dist.] pet. ref'd); s*ee* TEX. R. APP. P. 33.1(a)(1); *Crouse v. State*, 441 S.W.3d 508, 516–17 (Tex. App.— Dallas 2014, no pet.).

Even if appellant had preserved error, her argument is without merit.  The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures.  The entry into a residence by police officers is a search under the Fourth Amendment.  *Limon v. State*, 340 S.W.3d 753, 756 (Tex. Crim. App. 2011).  A search conducted without a warrant

---

[2] In making this argument, appellant mentions paper bags in her brief.  On cross-examination, Hauser referred to "those brown paper bags" and stated they had not come to him at all.  From the questioning, it appears the bags may have been marked as State's Exhibit 27, but the exhibit was not offered or admitted into evidence.  It is unclear from the record what the paper bags contained, but it does not affect our conclusion that the evidence is legally sufficient to support appellant's conviction.

based on probable cause is unreasonable, subject only to a few exceptions. *Meekins v. State*, 340 S.W.3d 454, 458 (Tex. Crim. App. 2011). One of those exceptions is a search conducted with the person's voluntary consent. *Limon*, 340 S.W.3d at 756; *Meekins*, 340 S.W.3d at 458. The State must show by clear and convincing evidence that the consent was freely given. *Carmouche v. State*, 10 S.W.3d 323, 331 (Tex. Crim. App. 2000). The validity of a consent to search is a question of fact to be determined from all the circumstances. *Meekins*, 340 S.W.3d at 458. Consent to entry from one who possesses authority over the premises is valid as against the absent, nonconsenting person with whom that authority is shared. *Limon*, 340 S.W.3d at 756. Common authority is derived from the third party's use of the property rather than his legal property interest. *Id.*

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review. *Weems v. State*, No. PD-0635-14, 2016 WL 2997333, at *2 (Tex. Crim. App. May 25, 2016). First, we afford almost total deference to the trial court's determination of the historical facts. The trial court is the sole judge of the witnesses' credibility and the weight to be given their testimony. *Id.* Second, we review the trial court's application of the law to the facts de novo. *Id.* We will uphold the trial court's ruling if the record reasonably supports it and it is correct on any theory of law applicable to the case. *Id.*

Police saw Rodriguez inside the house sitting at a table. The officers asked him if they could come in and before the oldest child could translate what they said into Spanish, he said "yes" in English. Rodriguez allowed them to come inside and told them he lived at the house. We conclude Rodriguez had authority to consent to the officers' entry into the house. Further, even if the officers' entry into the house was illegal, the State presented evidence appellant subsequently consented to Officer Dockter's request to search the house. We defer to the trial court's implied finding that appellant consented to the search of her house. Officer Dockter did

not find cocaine in appellant's bathroom until after she consented to the search. Thus, there was no causal connection between the initial entry into the house and the evidence appellant asserts should be suppressed. *See Wehrenberg v. State*, 416 S.W.3d 458, 467–68 (Tex. Crim. App. 2013) ("evidence obtained pursuant to an independent source, much like evidence for which a prior taint has been attenuated, is not 'obtained' in violation of the law and is thus not subject to suppression). The trial court did not err in denying appellant's motion to suppress. We overrule appellant's third issue. Because consent for the entry into the house and for the search was given, we need not consider appellant's remaining issues, issues two and four, about the lack of a warrant and the lack of exigent circumstances.

We affirm the trial court's judgment.

/Ada Brown/
ADA BROWN
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b).

141427F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

BERTHA MANCILLA, Appellant

No. 05-14-01427-CR        V.

THE STATE OF TEXAS, Appellee

On Appeal from the 283rd Judicial District Court, Dallas County, Texas
Trial Court Cause No. F-1324729-T.
Opinion delivered by Justice Brown, Justices Lang and Lang-Miers participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 13th day of July, 2016.