

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-0635-14

**DANIEL JAMES WEEMS, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE FOURTH COURT OF APPEALS
### BEXAR COUNTY

KEASLER, J., delivered the opinion of the Court, in which KELLER, P.J, and MEYERS, JOHNSON, HERVEY, ALCALA, RICHARDSON, and NEWELL, JJ., joined. YEARY, J., not participating.

### O P I N I O N

At his felony driving-while-intoxicated trial, Daniel Weems moved to suppress the results of a warrantless blood draw. The trial judge denied his request. The court of appeals reversed, holding, among other things, that the State failed to establish that Weems's warrantless blood draw was justified by exigent circumstances. We agree and affirm the court of appeals' judgment.

# I.

## A. Trial

Around midnight in early June 2011, Weems drove himself and a friend back to his house from a nearby bar where the two had been drinking. On the way, Weems's car started to slowly veer off the road, flipped over on to its roof, and struck a utility pole. Shortly after the accident, a passing car stopped after seeing the car on its roof with its tires still spinning. The driver was the first on the scene. She saw Weems get out of the vehicle through the driver's side window. Weems got out of the car and tried to stand, but was stumbling and having difficulty maintaining his balance. When she asked if he was okay or if he was drunk, Weems said he was drunk. He then ran from the scene. Weems's passenger was leaning against a post and was "beat up pretty bad from the accident." The driver of the passing car noticed a strong smell of alcohol coming from the inside of the car. She called 911.

Bexar County Sheriff's Deputy Munoz was dispatched to the scene, where, according to the caller, the driver left the scene of the accident. As he approached the area, Munoz stopped his car when a woman waved him down. She pointed to a parked car and told him that someone was under her car and that he did not belong there. When Munoz approached the parked car, he saw an injured man under the car matching the driver's description. Munoz detained Weems at 12:17 a.m. and noticed Weems's bloodshot eyes, slurred speech, bloodied face, and inability to stand on his own.

Deputy Bustamante took Weems into his custody where Munoz detained him roughly

a quarter of a mile away from the accident scene. Bustamante immediately noticed the strong odor of alcohol on Weems's breath, his bloodshot eyes, his unsteadiness on his feet, and his slurred speech. Because Bustamante believed that Weems suffered injuries as a result of the accident, he did not conduct any field-sobriety tests. Based on his observations, Bustamante concluded that Weems had lost the normal use of his mental and physical faculties due to alcohol[1] and arrested Weems on suspicion of driving while intoxicated.

Weems refused to give a breath or blood sample after being read the statutory warnings about the consequences of refusal. Weems was treated by EMS at the scene. But because he complained about neck and back pain, EMS transported him to University Hospital. Bustamante followed the ambulance to the hospital. It took only a "couple of minutes" to get from the accident scene to the hospital.

Based on his injuries, Weems was placed in the hospital's trauma unit. Once Bustamante arrived at the hospital he filled out a form requesting a blood draw and gave it to the nurse in charge. Because the hospital was particularly busy that night, Weems's blood was taken at 2:30 a.m., over two hours after his arrest. Subsequent testing indicated a blood-alcohol concentration of .18 grams per deciliter, well above the .08 gram per deciliter definition of intoxication.[2]

Weems sought to suppress the blood-test results at trial, relying on the United States

---

[1] *See* TEX. PENAL CODE § 49.01(2)(A) (defining intoxication as "not having the normal use of mental or physical faculties.").

[2] *See id.* § 49.01(1)–(2).

Supreme Court's opinion in *Missouri v. McNeely*[3] decided in the middle of his trial. Without making any findings of fact or conclusions of law, the judge overruled Weems's objection and admitted the test results. The jury convicted Weems of felony DWI and, after finding the enhancement allegation true, assessed a sentence of eight years' confinement.

## B. Court of Appeals

On appeal, Weems argued that the judge erred in failing to suppress the warrantless blood-draw results. The Fourth Court of Appeals agreed and found its admission harmful.[4] In reaching its conclusion, the court held that a warrantless search of a person is reasonable only if it falls within a recognized exception to the Fourth Amendment's warrant requirement.[5] In light of *Missouri v. McNeely*, the court held that Texas's implied consent and mandatory blood-draw schemes do not constitute warrant-requirement exceptions.[6] The court further held that the record developed at trial did not support admitting the evidence under the exigency exception.[7]

We granted the State's petition for discretionary review that asserted four grounds:

1.     Are the "established exceptions" to the "warrant requirement" the exclusive way of determining whether a particular warrantless search or seizure is

---

[3]   133 S. Ct. 1552 (2013).

[4]   *Weems v. State*, 434 S.W.3d 655, 667 (Tex. App.—San Antonio 2014).

[5]   *Id.* at 659.

[6]   *Id.* at 664–65.

[7]   *Id.* at 665–67.

reasonable under the Fourth Amendment?

2. Is a warrantless, nonconsensual search administered in compliance with Transportation Code section 724.012(b) reasonable under the Fourth Amendment?

3. Did the court of appeals err in its interpretation of section 724.012(b) by suggesting that the statute does not dispense with a search warrant?

4. Did the court of appeals err in its conclusion that there were no exigent circumstances?

## II.

We review a trial judge's ruling on a motion to suppress under a bifurcated standard of review.[8] First, we afford almost total deference to a trial judge's determination of historical facts. The judge is the sole trier of fact and judge of witnesses' credibility and the weight to be given their testimony.[9] When findings of fact are not entered, we view the evidence in the light most favorable to the judge's ruling and assume the judge made implicit findings of fact that support the ruling as long as the record supports those findings.[10] Second, we review a judge's application of the law to the facts *de novo*.[11] We will sustain the judge's ruling if the record reasonably supports that ruling and is correct on any theory of law applicable to the case.[12]

---

[8] *Turrubiate v. State*, 399 S.W.3d 147, 150 (Tex. Crim. App. 2013).

[9] *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010).

[10] *Id.*

[11] *Id.*

[12] *Id.* at 447–48.

## A. The Fourth Amendment

The Fourth Amendment provides in pertinent part that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause."[13]  A warrantless search of a person is reasonable only if it falls within a recognized exception.[14]  Bodily intrusions implicate an individual's "most personal and deep-rooted expectations of privacy," and therefore are considered searches that fall under the Fourth Amendment's warrant requirement.[15]  There are several exceptions to the warrant requirement, but the instant case involves only one: a warrantless search performed to prevent imminent evidence destruction.[16]  The delineated warrant-requirement exceptions are permitted because each is potentially reasonable and "there is a compelling need for official action and no time to secure a warrant."[17]

## B. The Fourth Amendment and Texas's Transportation Code

---

[13]  U.S. CONST. amend. IV.

[14]  *State v. Villarreal*, 475 S.W.3d 784, 796 (Tex. Crim. App. 2015), *reh'g denied*, 475 S.W.3d 817 (Tex. Crim. App. 2015) (per curiam).

[15]  *McNeely*, 133 S. Ct. at 1558–59 (quoting *Winston v. Lee*, 470 U.S. 753, 760 (1985)).

[16]  *See Cupp v. Murphy*, 412 U.S. 291, 296 (1973).

[17]  *McNeely*, 133 S. Ct. at 1559 (quoting *Michigan v. Tyler*, 436 U.S. 499, 509 (1978)).

In *State v. Villarreal*,[18] this Court considered and resolved the State's first three grounds for review against it. This Court considered and rejected the circumstances and interests that the State asserts in support for its argument that a search pursuant to § 724.012(b) is reasonable; namely, (1) § 724.012(b) is a reasonable statute under the "special needs" exception; (2) the State has a compelling interest in securing the most probative evidence; (3) § 724.012(b)'s command protects against arbitrary police conduct; and (4) and Weems has a diminished privacy interest.[19] We need not address these arguments.

The State also maintains the court of appeals misconstrued § 724.012(b) by holding that the statute does not eliminate the need for search warrants in certain limited situations, when in fact it does. However, this Court necessarily found against this argument by holding, that without an issued warrant, a search was unreasonable unless it fit an established warrant-requirement exception.[20] The Court also considered and necessarily rejected essentially the same argument on rehearing.[21] But *Villarreal*, like *McNeeley* itself, did not present an opportunity to address whether circumstances surrounding a warrantless blood draw satisfied the exigency exception and rendered the search constitutionally permissible.

---

[18] 475 S.W.3d at 784.

[19] *Id.* at 808–09 (holding that a warrantless search is reasonable only if it falls within a recognized exception to the warrant requirement and that a balancing test to determine whether the search was reasonableness is not appropriate).

[20] *See id.*

[21] *See id.* at 817 (per curiam) (opinion on reh'g).

### C. Exigency and Warrantless Blood Draws

As *Villarreal* made plain, a warrantless search is *per se* unreasonable unless it falls within a well-recognized exception to the warrant requirement.[22] The exigency exception operates "when the exigencies of the situation make the needs of law enforcement so compelling that a warrantless search is objectively reasonable under the Fourth Amendment."[23] Exigency potentially provides for a reasonable, yet warrantless search "because 'there is compelling need for official action and no time to secure a warrant.'"[24] Whether law enforcement faced an emergency that justifies acting without a warrant calls for a case-by-case determination based on the totality of circumstances.[25] "[A] warrantless search must be strictly circumscribed by the exigencies which justify its initiation."[26] An exigency analysis requires an objective evaluation of the facts reasonably available to the officer at the time of the search.[27]

In *Schmerber v. California*, the United States Supreme Court held that, based on the

---

[22] *Villarreal*, 475 S.W.3d at 808–09 (holding that the Texas Transportation Code provisions requiring a blood draw under certain circumstances did not create a Fourth Amendment exception).

[23] *McNeely*, 133 S. Ct. at 1558 (quoting *Kentucky v. King*, 131 S. Ct. 1849, 1856 (2011)).

[24] *Id.* at 1559 (quoting *Michigan v. Tyler*, 436 U.S. 499, 509 (1978)).

[25] *Id.* at 1559.

[26] *Mincey v. Arizona*, 437 U.S. 385, 393 (1978).

[27] *Brigham City, Utah v. Stuart*, 547 U.S. 398, 404 (2006).

circumstances surrounding the search, a warrantless seizure of a driver's blood was reasonable.[28]  Schmerber and his companion were injured and taken to a hospital after Schmerber's car skidded, crossed the road, and struck a tree.[29]  While Schmerber was at the hospital, a police officer directed a physician to take a sample of Schmerber's blood. Subsequent testing indicated a sufficient amount of alcohol in his blood to suggest intoxication.  Although a bodily intrusion calls for the same individual protections that the warrant requirement provides for the search of a home and the seizure of one's papers, the *Schmerber* Court held that the seizing officer "might reasonably have believed that he was confronted with an emergency, in which the delay necessary to obtain a warrant, under the circumstances, threatened the destruction of evidence."[30]

Adopting a totality-of-circumstances approach,[31] the Court held that the circumstances surrounding the blood draw rendered the warrantless search reasonable: (1) the officer had probable cause that Schmerber operated a vehicle while intoxicated;[32] (2) alcohol in the body naturally dissipates after drinking stops;[33] (3) the lack of time to procure a warrant because

---

[28]  *Schmerber v. California*, 384 U.S. 757, 770–72 (1966).

[29]  *Id*. at 785, n.2.

[30]  *Id*. at 770 (internal quotations omitted).

[31]  *Id*. at 768, 771–72.

[32]  *Id*. at 768–69.

[33]  *Id*. at 770.

of the time taken to transport Schmerber to a hospital and investigate the accident scene;[34] (4) the highly effective means of determining whether an individual is intoxicated;[35] (5) venipuncture is a common procedure and usually "involves virtually no risk, trauma, or pain";[36] and (6) the test was performed in a reasonable manner.[37]

The Supreme Court granted certiorari in *Missouri v. McNeely* to resolve a split of authority occurring in *Schmerber*'s wake as to whether the body's natural metabolization of alcohol in the bloodstream creates a "per se exigency that justifies an exception to the Fourth Amendment's warrant requirement for nonconsensual blood testing in all drunk-driving cases."[38] The Court unequivocally answered the question in the negative.[39]

When McNeely moved to suppress the blood test results under the Fourth Amendment, the prosecution argued that alcohol's natural dissipation in the bloodstream alone created a *per se* exigency under the Fourth Amendment.[40] In its petition for certiorari, Missouri relied exclusively on its argument that the body's natural dissipation of alcohol alone created an exigent circumstance; it did not challenge the lower court's holding by

---

[34] *Id*. at 770–71.

[35] *Id*. at 771.

[36] *Id*.

[37] *Id*. at 771–72.

[38] *McNeely*, 133 S. Ct. at 1556.

[39] *Id*. at 1563.

[40] *Id*. at 1558.

contending that the blood draw was reasonable under the exigency exception for other reasons.[41]  Rejecting Missouri's *per se* approach, the Court reaffirmed that a proper exigency analysis considers the totality of the circumstances—the approach it adopted in *Schmerber*.[42]

By the Court's own admission, the *McNeely* opinion is decidedly narrow.  The Court repeatedly noted that the record and Missouri's arguments "[did] not provide the Court with an adequate analytic framework for a detailed discussion of all the relevant factors that can be taken into account in determining the reasonableness of acting without a warrant."[43]  Yet the *McNeely* majority opinion went on for some length about when exigency may be found in the blood-draw context.  The Court announced that "where police officers can reasonably obtain a warrant before a blood sample can be drawn without significantly undermining the efficacy of the search, the Fourth Amendment mandates that they do so."[44]  But the Court would still consider alcohol's natural dissipation over time (and the attendant evidence destruction) the antagonizing factor central to law enforcement's decision whether to seek a warrant or proceed with a warrantless seizure:  "We do not doubt that some circumstances

---

[41]  *Id*. at 1568.

[42]  *Id*. at 1559–60 ("Our decision in *Schmerber* applied this totality of the circumstances approach.").

[43]  *Id*. at 1568.  *See also id*. at 1567 ("The State did not argue that there were exigent circumstances in this particular case . . . ."), *id*. at 1568 (stating that whether delays in obtaining a warrant will justify a blood draw without a warrant is an "inquiry [that] ought not to be pursued here where the question is not properly before this Court.").

[44]  *Id*. at 1561.

will make obtaining a warrant impractical such that the dissipation of alcohol from the bloodstream will support an exigency justifying a properly conducted warrantless blood test."[45]

While dissipation alone does not permit a warrantless search of a suspect's blood, there may be circumstances surrounding law enforcement's decision to forego obtaining a warrant that withstand Fourth Amendment scrutiny.  In addition to natural dissipation, the Court noted circumstances relevant to an exigency analysis of a warrantless blood draw. They include "the procedures in place for obtaining a warrant,"[46] "the availability of a magistrate judge,"[47] and "the practical problems of obtaining a warrant within a timeframe that still preserves the opportunity to obtain reliable evidence."[48]  Although the Court's highlighted circumstances carry uncertain precedential value in light of the case's posture, we nonetheless consider them persuasive and applicable.

## III.

On review of the totality of the circumstances found in the record, we conclude that Weems's warrantless blood draw was not justified by exigent circumstances. While there is

---

[45] *Id. See also id.* at 1568 ("It suffices to say that the metabolization of alcohol in the bloodstream and the ensuing loss of evidence are among the factors that must be considered in deciding whether a warrant is required.").

[46] *Id.* at 1568.

[47] *Id.*

[48] *Id.*

an aspect of the circumstances surrounding Weems's blood draw weighing in favor of finding an exigency, the totality of the circumstances found in the record do not warrant an exigency finding.

The record establishes that Weems crashed his car around 11:30 p.m. and ran from the scene of the accident. It took law enforcement approximately forty minutes to locate Weems who actively hid from law enforcement under a car approximately a half a mile from the accident. Weems's own actions certainly delayed law enforcement's ability to take him into custody and consequently placed law enforcement at a temporal disadvantage. While evading law enforcement by fleeing the accident scene and hiding, Weems's blood alcohol concentration potentially continued to diminish, and with it, possible evidence to prove or disprove his level of intoxication at the time of driving.[49] *Villarreal* does not, nor does *McNeely* itself, require us to turn a blind eye to alcohol's evanscence and the body's natural dissipation of alcohol in our calculus of determining whether exigency existed. Aside from Weems's own self-imposed delay and the forty minutes worth of alcohol dissipation, little else in the record lends support to finding exigency in this case.

The record is silent on whether Deputy Bustamante knew that, upon arriving at the hospital, it would take over two hours for hospital personnel to draw Weems's blood. And to charge the substantial actual delay in securing Weems's blood sample against

---

[49] *See* TEX. PENAL CODE § 49.04(a) (West 2012) (requiring intoxication "while operating a motor vehicle").

Bustamante's decision to forego a warrant would impermissibly measure Bustamante's action against hindsight's omniscience.[50] However, Deputy Bustamante did not express surprise over the delay in securing Weems's blood sample. He acknowledged that "since it was a Sunday morning, hospitals tend to get kind of busy, kind of packed due to the fact that there's crashes, you know, people getting sick all the time," and that "[w]e have no control over—normally when we request a form, depending how busy they are, sometimes it takes a long time just—just to draw someone's blood." The deputy's testimony suggests that substantial delay in obtaining Weems's blood was at least forseeable.

Bustamante described that the routine practice is to transport DWI arrestees to the San Antonio Magistrate's Office where they are asked to consent to a blood draw. If they do, the draw is performed immediately at that location. If arrestees do not consent, the officers will draft an affidavit and present it to a magistrate to obtain a warrant. The record does not reflect how long this process normally takes. But in this instance, Bustamante testified that, because Weems complained of neck and back pain, Weems was transported to the hospital and the hospital decided it was best to keep him there for observation. The record does not reflect what procedures, if any, existed for obtaining a warrant when an arrestee is taken to

---

[50] *See Ryburn v. Huff*, 132 S. Ct. 987, 992 (2012) (per curiam) (instructing that "reasonableness must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight and that the calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving.") (internal quotations omitted).

the hospital or whether Bustamante could have reasonably obtained a warrant, and if so, how long that process would have taken. We are therefore left with the inability to weigh the time and effort required to obtain a warrant against the circumstances that informed Bustamante's decision to order the warrantless blood draw. Although the record does not definitively establish that a magistrate was available at the time Weems's blood was drawn, Bustamante's testimony suggests that a magistrate is normally available to review Bexar County Sheriff's deputies' search-warrant requests.

Although both this case's record and that presented in *Schmerber* involved an alcohol-involved accident, the similarity of the two records end there. In *Schmerber*, the Court noted "where time had to be taken to bring the accused to the hospital and to investigate the scene of the accident, there was no time to seek out a magistrate and secure a warrant."[51] This passage does not accurately describe the circumstances surrounding Weems's blood draw. First, Deputy Bustamante testified that the hospital was only a "couple of minutes" away. So transporting Weems to the hospital did not necessarily make obtaining a warrant impractical or unduly delay the taking of Weems's blood to the extent that natural dissipation would significantly undermine a blood test's efficacy. Second, Bustamante was not alone charged with both investigating the scene of the accident and escorting Weems to the hospital for treatment. Deputy Shannon—Bustamante's instructor—waited with Bustamante and Weems at the hospital until Weems's blood was taken. Once the blood was drawn, Shannon

---

[51] *Schmerber*, 384 U.S. at 770–71.

left the hospital to place the blood sample in the evidence locker at the Magistrate's Office for subsequent testing. Another officers' presence or the "hypothetically available officer" that, in theory, could have secured a warrant in the arresting officer's stead will certainly not render all warrantless blood draws a Fourth Amendment violation, nor do we suggest it is a circumstance that the State must disprove in every case to justify a warrantless search under an exigency theory. But this record establishes that Shannon was with Bustamante and Weems throughout the investigation and while they were at the hospital waiting for Weems's blood to be drawn. On this particular record, Shannon's continued presence distinguishes *Schmerber* from the present case and militates against a finding that practical problems prevented the State from obtaining a warrant within a time frame that preserved the opportunity to obtain reliable evidence.[52]

## IV.

*McNeely* commands that "where police officers can reasonably obtain a warrant before a blood sample can be drawn without significantly undermining the efficacy of the search, the Fourth Amendment mandates that they do so."[53] On this record, the State is unable to demonstrate that practical problems existed in obtaining a warrant "within a timeframe that still preserved the opportunity to obtain reliable evidence."[54] The State failed

---

[52] *See McNeely*, 133 S. Ct. at 1568.

[53] *Id.* at 1561.

[54] *See id.* at 1568.

to meet its burden and establish that exigency circumstances existed to satisfy the Fourth Amendment's reasonableness standard.[55]

The court of appeals' judgment is affirmed.

DELIVERED: May 25, 2016

PUBLISH

---

[55] *See Ford v. State*, 158 S.W.3d 488, 493 (Tex. Crim. App. 2005) (stating that it is the State's burden to establish that a warrantless search was reasonable).