PD-1359-17
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 6/4/2018 10:39 AM
Accepted 6/6/2018 9:35 AM
DEANA WILLIAMSON
CLERK

No. PD-1359-17

FILED
COURT OF CRIMINAL APPEALS
6/6/2018
DEANA WILLIAMSON, CLERK

## IN THE
# TEXAS COURT OF CRIMINAL APPEALS
## AUSTIN, TEXAS

SANDRA COY BRIGGS, *APPELLANT/RESPONDENT,*

*v.*

STATE OF TEXAS, *APPELLEE/PETITIONER*

ON APPELLEE'S PETITION FOR DISCRETIONARY REVIEW FROM THE
THIRTEENTH COURT OF APPEALS CAUSE NO. 13-15-00147-CR

TRIED IN THE 186TH JUDICIAL DISTRICT COURT, BEXAR COUNTY, TEXAS
TRIAL CAUSE NO. 2011-CR-2567

## APPELLANT'S REPLY BRIEF

DAYNA L. JONES
Bar No. 24049450
LAW OFFICE OF DAYNA L. JONES
1800 McCullough Avenue
San Antonio, Texas 78212
(210) 255-8525
(210) 223-3248 – FAX
DAYNAJ33@GMAIL.COM

*Attorney for Sandra Briggs*

i

## IDENTITY OF PARTIES AND COUNSEL

**FOR THE STATE OF TEXAS AT TRIAL:**
SUSAN REED
Bar No. 16687400
TAMARA STRAUCH
Bar No. 00789188
CHARLES RICH
Bar No. 24035653
DISTRICT ATTORNEY'S OFFICE
100 Dolorosa
San Antonio, Texas 78205

**FOR THE STATE OF TEXAS AT MOTION FOR NEW TRIAL:**
DAVID HENDERSON
Bar No. 24032292
NATHAN MOREY
Bar No. 24074756
DISTRICT ATTORNEY'S OFFICE
101 W. Nueva
San Antonio, Texas 78205

**FOR THE STATE OF TEXAS ON APPEAL:**
NICHOLAS "NICO" LAHOOD
Bar No. 24030360
JENNIFER ROSSMEIER BROWN
Bar No. 24079247
ENRICO "RICO" VALDEZ
Bar No. 00797589
Paul Elizondo Tower
101 W. Nueva Street, 7th Floor
San Antonio, Texas 78205

**DEFENDANT'S TRIAL COUNSEL:**
EDWARD PIKER
Bar No. 16008800
315 S. Main Ave
San Antonio, Texas 78204

**APPELLANT'S COUNSEL:**
DAYNA L. JONES
Bar No. 24049450
1800 McCullough Avenue
San Antonio, Texas 78212

**JUDGE PRESIDING AT TRIAL:**
HONORABLE MARIA TERESA HERR

**JUDGE PRESIDING AT MOTION FOR NEW TRIAL:**
HONORABLE JEFFERSON MOORE

# TABLE OF CONTENTS

Parties to the Case ..................................................................................... ii

Table of Authorities ...................................................................................iv

Statement on Oral Argument ......................................................................1

Issues Presented ..........................................................................................1

Summary of the Argument...........................................................................1

Statement of the Case and Procedural History ...........................................1

Statement of Relevant Facts........................................................................3

Argument and Authorities...........................................................................8

    THE COURT OF APPEALS DID NOT ERR IN CONCLUDING THAT TRIAL COUNSEL'S ADVICE WAS A MISREPRESENTATION OF THE LAW THAT RENDERED APPELLANT'S PLEA INVOLUNTARY ................................................................8

Prayer ........................................................................................................26

Certificate of Service ................................................................................27

Certificate of Compliance .........................................................................27

# TABLE OF AUTHORITIES

**Cases:**

*Aviles v. State,* 385 S.W.3d 110, 116 (Tex.App.-San Antonio 2012), *vacated,* —— U.S. ——, 134 S.Ct. 902, 187 L.Ed.2d 767 (2014).................................... 10, 14-15

*Beeman v. State*, 86 S.W.3d 613, 615 (Tex. Crim. App. 2002) ........................ 9-11

*Bowman v. State*, No. 05-13-01349-CR, 2015 WL 557205 (Tex. App. Feb. 10, 2015) ......................................................................................................18

*Brady v. United States*, 397 U.S. 742, 757 (1970) ............................................ 19-21

*Briggs v. State*, 536 S.W.3d 592, 594 (Tex. App.—Corpus Christi, 2017, pet. granted)(en banc) ................................................................................3, 11, 12, 24

*Briggs v. State*, No. 13-15-00147-CR, 2017 WL 930023 (Tex. App. Mar. 9, 2017) . ......................................................................................................3

*Chaidez v. U.S.*, 133 S.Ct. 1103 (U.S.,2013).........................................................12

*Davis v. U.S.*, 564 U.S. 229, 243, 131 S.Ct. 2419, 180 L.Ed.2d 285 (2011) .........24

*Griffith v. Kentucky*, 479 U.S. 314 (1987) .....................................................17, 25

*Holidy v. State*, 2014 WL 1722171 (Tex.App.-Texarkana,2014, pet. granted) ......16

*McDonald v. United States,* 335 U.S. 451, 69 S.Ct. 191 (1948) ............................14

*McNeil v. State*, 443 S.W.3d 295 (Tex.App.–San Antonio,2014, pet. ref'd)..........23

*Missouri v. McNeely*, 133 S. Ct. 1552 (2013) ..................................................*passim*

*Rios v. State*, 377 S.W.3d 131 (Tex.App.–Houston [1 Dist.], 2012)................. 22-23

*Schmerber v. California,* 384 U.S. 757 (1966) .................................................11, 13

*State v. Guzman*, 959 S.W.2d 631, 633 (Tex. Crim. App.  1998) ..........................11

*State v. Villarreal*, 476 S.W.3d 45, 58 (Tex. App.—Corpus Christi 2014), *aff'd* 475 S.W.3d 784 (Tex. Crim. App. 2014). ...........................................................*Passim*

*Sutherland v. State*, 2014 WL 1370118 (Tex.App.–Amarillo,2014, pet. filed) ......16

*Teague v. Lane*, 489 U.S. 288 (1989) ...................................................................12

*Whorton v. Bockting*, 549 U.S. 406 (2007) ..........................................................17

*Weems v. State*, 434 S.W.3d 655 (Tex.App.–San Antonio,2014, *aff'd* 493 S.W.3d 574, (Tex.Crim.App. 2016), *reh'g denied* (Jul 27, 2016) ...................9-10, 12, 15-16

*Weems v. State*, 493 S.W.3d 574, 577 (Tex. Crim. App. 2016), *reh'g denied* (July 27, 2016)(internal citations omitted) ...................................................9-10, 12, 15-16

*Young v. State*, 8 S.W.3d 656, 659 (Tex. Crim. App. 2000) ..................................21

**Rules:**

Tex. Code of Crim. Pro. Article 38.23.................................................................. 8-9

Tex. Trans. Code §724.012.......................................................................12, 14, 16

U.S. CONST. Amend. IV. ..........................................................................*Passim*

## STATEMENT ON ORAL ARGUMENT

Pursuant to the Court's Order granting the State's Petition for Discretionary Review, oral argument is not permitted.

## ISSUES PRESENTED

**REPLY TO GROUND ONE:** THE COURT OF APPEALS DID NOT ERR IN CONCLUDING THAT TRIAL COUNSEL'S ADVICE WAS A MISREPRESENTATION OF THE LAW THAT RENDERED APPELLANT'S PLEA INVOLUNTARY.

## SUMMARY OF THE ARGUMENT

The holdings of *Missouri v. McNeely*, 133 S. Ct. 1552 (2013) and its progeny were based on long-standing, well-established Fourth Amendment law regarding search and seizure and did not create a new rule concerning warrantless blood draws in alcohol related cases. Therefore, at the time of her plea, Sandra Coy Briggs received improper advice regarding the warrantless search and seizure of her blood and its admissibility at trial – a central issue of her case directly led to her decision to forego a trial and plead no contest to the charge of intoxication manslaughter of a public servant. Moreover, when *McNeely* and its progeny were rendered, Briggs's case was still pending on appeal and therefore these cases apply to her case.

## STATEMENT OF THE CASE AND PROCEDURAL HISTORY

Ms. Briggs pleaded no contests to the charge of intoxication manslaughter of a public servant on January 2013 and elected to have a jury impose her sentence. No motion for new trial or notice of appeal was filed, but Briggs filed for and was

granted an out of time appeal. She then filed a Motion for New Trial alleging that her plea of no contest without a plea bargain agreement violated due process and was not entered into knowingly, intelligently, or voluntarily. 1CR123-35. At the Motion for New Trial hearing, her trial attorney testified that he advised Appellant that the blood evidence was taken pursuant to the mandatory provisions of the Transportation Code and, believing that this evidence was lawfully obtained, steered Appellant into pleading no contest and going open to a jury for punishment. Between the time that she was sentenced by the jury and her Motion for New Trial hearing, the Supreme Court issued its opinion in *Missouri v. McNeely*, 133 S. Ct. 1552 (2013) and Texas appellate courts, including the Court of Criminal Appeals in *State v. Villarreal*, 476 S.W.3d 45, 58 (Tex. App.—Corpus Christi 2014), *aff'd* 475 S.W.3d 784 (Tex. Crim. App. 2014). followed suit.

At the Motion for New Trial hearing the State took the position, which contradicted its position at the original sentencing hearing, that the warrantless blood draw met the exigent circumstances exception to the warrant requirement. Ultimately, the trial court denied Appellant's Motion for New Trial finding that there were exigent circumstances that allowed for a warrantless blood draw.

On direct appeal, the Thirteenth Court of Appeals reversed Respondent's conviction and remanded the case for a new trial. In doing so, the original panel found that counsel's advice did misrepresent the law, thus rendering her plea

involuntary. *Briggs v. State*, No. 13-15-00147-CR, 2017 WL 930023 (Tex. App. Mar. 9, 2017). The State motioned the appellate court for rehearing en banc, which was granted, but ultimately the majority still found that trial counsel misrepresented the law and reversed the conviction. *Briggs v. State*, 536 S.W.3d 592, 594 (Tex. App.—Corpus Christi, 2017, pet. granted)(en banc).

## STATEMENT OF RELEVANT FACTS

### *Sentencing Hearing*

San Antonio Police Officer Luther was called to the scene of the accident to evaluate Briggs for impairment. 5RR40. He could smell the odor of alcohol when he opened the back door of the police unit where Briggs was sitting. Luther explained that her demeanor was mellow, unexcited, and concerned for her car. 5RR37-45. Luther conducted the Standardized Field Sobriety Tests and then he requested a sample of her breath or blood which Appellant refused. 5RR58,62-63. Luther testified that the law required him to draw a mandatory blood sample. 5RR63. He also explained that a sample could be taken from Appellant at the magistrate's office or jail. "We have a nurse's station with a registered nurse who draws blood." 5RR67. Luther described that the nurse's station where the blood was drawn was down the hall from the jail holdings cells. 5RR64. The prosecutor asked: "With regards to the circumstance that you're dealing with, this situation, by law can you end at a refusal and consider it done?" 3RR63. Luther answered: "No. With everything that

3

happened with the accident that has serious bodily injury, we cannot end it at the refusal. We have to get the specimen." 5RR63.

Luther testified that at the nurse's station he told Appellant "there would be a mandatory blood draw." 5RR88. He testified that the blood draw became mandatory after she refused. 5RR89.

*Motion for New Trial Hearing*

On February 18, 2015, after obtaining an out of time appeal, a motion for new trial was heard by Judge Jefferson Moore. Trial counsel Ed Piker testified that based on his knowledge at the time, he did not file a motion to suppress the results of the warrantless blood draw, but he took several approaches to attempt to challenge the blood evidence. 9RR8. He explained that his chief concern in this case was the blood evidence and his ultimate goal was to discredit or keep the blood evidence from coming in at a trial. 9RR8-9. The results of the blood was a significant problem for the defense and after Mr. Piker was unable to come up with a method to keep the blood evidence out at a trial, he and Briggs took the approach to plead no contest and allow a jury to assess punishment. 9RR-10. Based on the new case law regarding warrantless blood draws, Piker stated that he would have filed a motion to suppress and, if the blood was ordered suppressed, he would have advised Briggs to proceed to trial. 9RR11. Piker testified that he did advise Briggs about her options, but the

4

advice would have been different if the *Villarreal* case of a warrantless blood draw had been issued at that time. 9RR6-17.

Briggs testified that she did not consent to have her blood drawn, but that it was ordered by the officer. 9RR19. Based on her discussions with Mr. Piker, Briggs knew that the blood evidence was problematic if she went to trial. *Id*. Based on the advice of Mr. Piker, it was her belief that the blood evidence would come in at trial, but if there was a way for him to keep it from being used against her at trial, she would have wanted a trial. 9RR20. In short, Briggs waived her right to remain silent, waived her right to trial, and waived her right to confront the witnesses against her based on her belief that the warrantless blood draw was proper and that the evidence would be used against her at trial.

Both sides then rested. During closing the State argued that Appellant's conviction was final, even though she was granted an out of time appeal, and *Missouri v. McNeely* should not apply. 9RR30. Judge Moore asked the State whether it had any argument on whether any exigent circumstances existed in this case. Over counsel's objection that allowing the State to present testimony on exigent circumstances was way outside the scope of the Motion for New trial issue. The Court allowed the State to reopen and present testimony from Sergeant Foulke. 9RR39.

Sergeant Foulke explained the process of obtaining a blood draw and why a warrant was not obtained to collect Briggs's blood. Foulke's testimony completely contradicted the State's prior position at sentencing. Foulke testified that there were exigent circumstances that prevented the officers from getting a warrant because "[a]nytime it involves a crash or a fatal or a near-fatal incident, it's always exigent because you want that sample as close to the time of the crash so it's the most accurate. And so anytime we deal with something like this, we're under exigent circumstances." 9RR42. Although he was not in charge of the scene that night, but he was the reporting detective, he testified that it took three hours to get the blood drawn that night. *Id.* This contradicted the other officers' testimony from sentencing.

He also testified that in order to get a warrant, it would have taken additional time because the other officers were not trained in warrants like they are now. 9R43. Investigating an intoxication manslaughter also takes much longer than investigating a garden variety DWI because you have to talk to witnesses and find out if the intoxicated person actually caused the crash. 9RR47. However, these were issues that the officers testified at sentencing were determined relatively quickly after the accident occurred.

On cross-examination, Foulke agreed that an officer actually does not need to know whether a driver caused the accident to get warrant for their blood; the officer only needs to know if the person was suspected of driving while intoxicated. 9RR48-

49. He agreed that whether the person caused the accident does not need to go into the warrant. 9RR49. He acknowledged that he could have used the Night CID to assist with obtaining a warrant but he did not reach out to them. 9RR51-52. He also agreed that Luther could have given his information to a detective to get the warrant. 9RR52. Foulke agreed that Luther was the officer who transported Appellant to the magistrate that night and that the authorization form to have her blood drawn was filled out at 410 a.m. 9RR51. Thus, at 410 a.m. she was ready to have her blood drawn, but it was not drawn until over an hour later. *Id*.

Foulke also agreed that even if the magistrate judge could not have signed a warrant, that it was possible to get a judge to sign warrant. 9RR53. He has had other people get warrants signed for him by waking-up a judge in the middle of the night. 9RR53.

Foulke was specifically asked to define exigency and he stated:

> "Exigency to me is – Ever since I started in DWI, two hours is the argument, arguing timeline. You always tried to get that breath sample, that blood sample within two hours of driving because anything after that, the arguments start…And so when you're playing with a two-hour timeline, that makes it pretty exigent. Unfortunately, to me, exigent means several different things. First off, you want to obtain it as soon as possible,…Based on the sciences and everything else, the blood starts to dissipate, they peak at within an hour and a half from when they stop drinking and then it starts dropping from then, so you're losing your evidence. So that makes it exigent. The next part that you're dealing with is the sheer volume or sheer issue at hand where somebody has died. You want that evidence so it eliminates any arguments and it's the most accurate." 9RR54.

7

When pressed on why you want the blood within two hours, he responded: "Based on the sciences and everything else, the blood starts to dissipate…so you're losing your evidence. So that makes it exigent." 9RR54. Foulke also agreed that according to Luther's own report, he utilized the mandatory provisions of the transportation code for the purpose of obtaining the blood without a warrant. 9RR56-57.

On February 20, 2015, Judge Moore ruled that the *McNeely* case does apply to Briggs, but found that there were exigent circumstances in this case and denied the motion for new trial. 9ARR4-6.

## ARGUMENT AND AUTHORITIES

### REPLY TO GROUND ONE:

**THE COURT OF APPEALS DID NOT ERR IN CONCLUDING THAT TRIAL COUNSEL'S ADVICE WAS A MISREPRESENTATION OF THE LAW THAT RENDERED APPELLANT'S PLEA INVOLUNTARY.**

### A. Law at the Time of Briggs' Plea

The Texas Code of Criminal Procedure Article 38.23 provides that evidence obtained in violation "of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America" shall not be admitted in evidence against the accused. The Fourth Amendment of the United States Constitution also provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be

violated, and no Warrants shall issue, but upon probable cause. A warrantless search of a person is reasonable only if it falls within a recognized exception." *Weems v. State*, 493 S.W.3d 574, 577 (Tex. Crim. App. 2016), *reh'g denied* (July 27, 2016)(internal citations omitted). It is not disputed that Article 38.23 and the Fourth Amendment were well established at the time of the plea.

What is disputed by the State is the law that was in place at the time of plea regarding the mandatory blood draws. In its brief, the state argues that Mr. Piker's advice was based on this Court's precedent at the time she entered her plea and cites *Beeman v. State*, 86 S.W.3d 613, 615 (Tex. Crim. App. 2002) to support this position. *State's Brief* at p. 13. As the Fourth Court of Appeals noted in its original *Weems* opinion, the language relied on by the state from *Beeman* is dicta.

> "In support of its argument that the warrantless blood draw was reasonable pursuant to the implied consent and mandatory blood draw statutes, the State relies on the following dicta from *Beeman v. State,* 86 S.W.3d 613, 615 (Tex.Crim.App.2002):
>
> > The implied consent law does just that-it implies a suspect's consent to a search in certain instances. *This is important when there is no search warrant, since it is another method of conducting a constitutionally valid search.* On the other hand, if the State has a valid search warrant, it has no need to obtain the suspect's consent.
> >
> > *The implied consent law expands on the State's search capabilities by providing a framework for drawing DWI suspects' blood in the absence of a*

> *search warrant.* It gives officers an additional weapon in their investigative arsenal, enabling them to draw blood in certain limited circumstances *even without a search warrant.*

> *Id.* (emphasis added). Although this language is dicta, the Texas Court of Criminal Appeals did recognize in *Beeman* that the implied consent statute expanded the State's authority to draw a DWI suspect's blood in the absence of a warrant." *Weems v. State*, 434 S.W.3d 655, 660 (Tex. App. 2014), *aff'd*, 493 S.W.3d 574 (Tex. Crim. App. 2016).

This same dicta from *Beeman* was relied on by the Fourth Court of Appeals in *Aviles v. State*, which was ultimately vacated by the United States Supreme Court. *Aviles v. State,* 385 S.W.3d 110, 116 (Tex.App.-San Antonio 2012), *vacated,* —— U.S. ——, 134 S.Ct. 902, 187 L.Ed.2d 767 (2014).

Until April 2013 Texas attorneys, police, lawyers, and judges relied on the mandatory blood draw provisions as a lawful way to obtain blood in certain alcohol related offenses, however, this reliance was based on a violation of the Fourth Amendment. The section of the Texas Transportation Code that the officer relied on to obtain Briggs's blood has been deemed to be a warrantless search of a person that is only reasonable, thus legal, if it falls within a recognized exception. In this case, Briggs's blood was drawn, as detailed in the police report and as the evidence from her sentencing trial proved, pursuant to the "mandatory blood draw" provisions in the Transportation Code. 5RR63, 88-89; 9RR56-57. Thus, the blood was unlawfully obtained unless it was conducted pursuant to a recognized exception.

Although the language from *Beeman* was available at the time Appellant took her plea, this language does not comport with Supreme Court and constitutional precedent that had been well-established for decades prior to Briggs entering her plea. The Transportation Code, or the state's interpretation of it, does not trump the constitution or Supreme Court precedent. *State v. Guzman*, 959 S.W.2d 631, 633 (Tex. Crim. App. 1998) ["When we decide cases involving the United States constitution, we are bound by United States Supreme Court case law interpreting it. If Texas case law is in conflict, we are obligated to follow United States Supreme Court federal constitutional precedents. *See* United States Constitution, Article VI. This Court has recognized that where one of our decisions on a federal constitutional issue directly conflicts with a United States Supreme Court holding, we are bound to overrule our decision. *See, e.g., Samudio v. State,* 648 S.W.2d 312, 314 (Tex.Crim.App.1983)."]

The original panel as well as the en banc majority in this case correctly held that the Supreme Court in *McNeely* did not create a new rule, but relied on its 1966 decision in *Schmerber*. *Briggs v. State*, 536 S.W.3d 592, 598 (Tex. App.—Corpus Christi, 2017, pet. granted)(en banc). In *Schmerber*, the Supreme Court relied on the totality of the circumstances approach which it re-emphasized was still appropriate in *McNeely*. *McNeely* simply reaffirmed well-established Fourth Amendment principles. The fact that a warrantless search or seizure is *per se* unreasonable is

11

nothing new. This has been a tenant of criminal law long before Briggs took her plea. The Thirteenth Court correctly noted that "section 724.012 provides for a mandatory blood draw in certain circumstances, but not a mandatory, warrantless blood draw. *State v. Villarreal*, 476 S.W.3d 45, 58 (Tex. App.—Corpus Christi 2014), *aff'd* 475 S.W.3d 784 (Tex. Crim. App. 2014). So section 724.012 does not provide an exception to the warrant requirement absent exigent circumstances. *See Weems*, 493 S.W.3d at 578; *see also* Tex. Trans. Code Ann. § 724.012." *Briggs v. State*, 536 S.W.3d 592, 602 (Tex. App. 2017) (pet. granted Mar. 21, 2018).

### i.    *McNeely* Did Not Create a New Rule

In *Chaidez,* the United States Supreme Court re-examined *Teague*'s "new rule" requirements. In following *Teague v. Lane*, 489 U.S. 288 (1989), the Court stated:

> "'[A] case announces a new rule,' *Teague* explained, 'when it breaks new ground or imposes a new obligation' on the government. 489 U.S., at 301, 109 S.Ct. 1060. 'To put it differently,' we continued, 'a case announces a new rule if the result was not *dictated* by precedent existing at the time the defendant's conviction became final.' *Ibid.*" *Lambrix v. Singletary,* 520 U.S. 518, 527–528, 117 S.Ct. 1517, 137 L.Ed.2d 771 (1997)." *Chaidez v. U.S.*, 133 S.Ct. 1103, 1107 (U.S.,2013).

Thus, it is not a "new rule" if it is dictated by prior precedent. *McNeely*, and then *Villarreal* in the Texas Court of Criminal Appeals, clearly relied on prior Fourth

12

Amendment precedent when deciding whether natural metabolization of alcohol presents a *per se* exigency that justifies a warrantless blood draw.

> "[W]e hold, **consistent with general Fourth Amendment principles**, that exigency in this context must be determined case by case based on the totality of the circumstances." *Missouri v. McNeely*, 133 S. Ct. 1552, 1556 (2013)(emphasis added).

In *Villarreal*, the Texas Court of Criminal Appeals relied on *McNeely's* analysis of Fourth Amendment precedent, and turned on its "review of the relevant Fourth Amendment principles" in deciding that case. *State v. Villarreal*, 475 S.W.3d 784, 795 (Tex. Crim. App. 2014).

For example, both *McNeely* and *Villarreal* relied on *Schmerber v. California,* 384 U.S. 757 (1966), a Supreme Court opinion that issued in 1966. In *Schmerber,* the Supreme Court upheld the warrantless blood draw in that case because the officer "might reasonably have believed that he was confronted with an emergency, in which the delay necessary to obtain a warrant, under the circumstances, threatened the destruction of evidence." *Id*. at 770. But, the Court also emphasized that "[t]he importance of informed, detached and deliberate determinations of the issue whether or not to invade another's body in search of evidence of guilt is indisputable and great." *Id*. Ultimately, the Court reasoned that on the "special facts" of the case, the officer in that particular case was justified in acting without a warrant. *Id*. 770-771.

In *Missouri v. McNeely*, 133 S. Ct. 1552 (2013), the United States Supreme Court also remained true to its previous Fourth Amendment holdings that the

exigency of a particular situation that would allow for the taking of blood without a warrant must be evaluated on a case by case basis. *Id*. at 1556.

> "In those drunk-driving investigations where police officers can reasonably obtain a warrant before a blood sample can be drawn without significantly undermining the efficacy of the search, the Fourth Amendment mandates that they do so. *See McDonald v. United States,* 335 U.S. 451, 456, 69 S.Ct. 191, 93 L.Ed. 153 (1948) ("We cannot ... excuse the absence of a search warrant without a showing by those who seek exemption from the constitutional mandate that the exigencies of the situation made [the search] imperative")." *Id*.

In *Villarreal*, this Court relied on longstanding Fourth Amendment principles to "hold that the provisions in the Transportation Code do not, taken by themselves, form a constitutionally valid alternative to the Fourth Amendment warrant requirement." *Villarreal* at 813.

The Fourth Court of Appeals in *Aviles v. State*, 385 S.W.3d 110, 116 (Tex.App.–San Antonio, 2012) found that the Texas Transportation Code §724.012 authorized the officer "to require the mandatory blood draw from Aviles without express consent and without a warrant, given Aviles's two prior DWI convictions." *Aviles v. State*, 385 S.W.3d 110, 116 (Tex.App.–San Antonio,2012). The United States Supreme Court granted certiorari, vacated the judgment and remanded this case back to that Court "for further consideration in light of *Missouri v. McNeely,*569 U.S. ——, 133 S.Ct. 1552, 185 L.Ed.2d 696 (2013)." *Aviles v. Texas*, 134 S.Ct. 902, 187 L.Ed.2d 767, 82 USLW 3404 (U.S.2014).

14

In 2014, the Fourth Court of Appeals issued its opinion in *Weems v. State*, 434 S.W.3d 655 (Tex.App.–San Antonio,2014) *aff'd* 493 S.W.3d 574 (Tex. Crim. App. 2016), reversing Weems's conviction for the offense of felony driving while intoxicated with a "repeat felony offender" enhancement allegation and remanding it for a new trial. *Id*.

Relying on the U.S. Supreme Court decision in *Missouri v. McNeely*, 133 S. Ct. 1552 (2013), the Fourth Court held that "a warrantless search of the person is reasonable only if it falls within a recognized exception…Exigent circumstances is one such well-recognized exception." *Weems* at 689 (internal citations omitted). In that case the State argued that the Texas Transportation Code was "'a reasonable substitute' for the Fourth Amendment's warrant requirement. In other words, it argues that this statutory scheme should be considered an exception to the warrant requirement." *Id*. The Fourth Court disagreed and further rejected the State's position that the Texas implied consent and mandatory blood draw statutes are exceptions to the Fourth Amendment's warrant requirement. *Weems* at 665. "Texas's implied consent and mandatory blood draw statutes clearly created such categories or per se rules that the Supreme Court proscribed in *McNeely*." *Id*.

In conclusion, the Court held that "[t]o be authorized, the State's warrantless blood draw of Weems must be based on a well-recognized exception to the Fourth Amendment." *Weems* at 665.

The Amarillo Court of Appeals also similarly held that the mandatory and implied consent provisions of the Texas Transportation Code must be based on valid, previously recognized exceptions to the warrant requirement. *See also Sutherland v. State*, 2014 WL 1370118, 10 (Tex.App.–Amarillo, 2014, pet. ref'd) ["On the record before us, the arresting officer was not faced with exigent circumstances such that the natural dissipation of alcohol from appellant's bloodstream would support a warrantless seizure of a specimen of appellant's blood. We sustain appellant's point of error and conclude that the trial court erred by denying appellant's motion to suppress. To the extent that Section 724.012(b)(3)(B) can be read to permit, nonetheless, a warrantless seizure of a suspect's blood in the absence of such exigent circumstances or the suspect's consent, it runs afoul of the Fourth Amendment's warrant requirement."]

The Court of Appeals from Texarkana also reversed the warrantless blood draw conviction in *Holidy v. State*, finding that the Transportation Code § 724.012(b)(3)(B) implied consent law was unconstitutional. *Holidy v. State*, 2014 WL 1722171, 1 (Tex.App.-Texarkana,2014, pet. granted).

If a "new rule" is established then it applies to cases that are pending on appeal. If the new case does not express a new rule, but still follows the old rules, it applies to cases that are pending on appeal and to cases that are final but where a defendant is seeking collateral review. In *Griffith v. Kentucky*, 479 U.S. 314 (1987),

the Supreme Court held that "a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final…" *Id*. at 662. "[A]n old rule applies both on direct and collateral review." *Whorton v. Bockting*, 549 U.S. 406, 415 (2007); *citing Griffith v. Kentucky*, 479 U.S. 314 (1987).

Thus, since these opinions have not broken new ground or imposed new obligations on the government, recent case law applies to Appellant's case whether her case is classified as final or still pending on review.

**ii.      If the Court Finds *McNeely* Did Create a "New Rule", it Still Applies Because Appellant's Case is Not Yet Final**

At the Motion for New Trial hearing and also in the lower appellate court, the State argued that Appellant's conviction was final and not pending on review when *McNeely* issued. However, in *Griffith* the definition of "final" is clarified in footnote 6: "By 'final,' we mean a case in which a judgment of conviction has been rendered, the **availability of appeal exhausted**, and the time for a petition for certiorari elapsed or a petition for certiorari finally denied." *Griffith* at 657. Appellant was granted an out of time appeal and in the Court of Criminal Appeals order it is stated that "[a]ll time limits shall be calculated as if the sentence had been imposed on the date on which the mandate of this Court issues." *Ex parte Briggs*, No. WR-82,035-01. The "availability of appeal" had not been "exhausted" as required and therefore her conviction was not final.

17

The Fifth Court of Appeals in Dallas addressed whether *McNeely* applied to a case on appeal and it held that it did. Although the Court did not specifically decide whether *McNeely* announced a new rule, it did find that the case was pending on appeal when the opinion was issued and therefore applied to the case that was before the Court. *See Bowman v. State*, No. 05-13-01349-CR, 2015 WL 557205 (Tex. App. Feb. 10, 2015).

## B. State's Arguments

Appellee fails to consider that the holdings of *McNeely*, *Villarreal*, and their progeny rely on Fourth Amendment principles that were binding law long before Briggs took her plea. The advice that Mr. Piker gave at the time that Briggs was awaiting trial was a misrepresentation of the law, albeit a common misrepresentation amongst members of the Texas criminal justice system, but a misrepresentation of the law nonetheless. The implied consent law was never a valid substitute to the warrant requirement. Thus, Mr. Piker, along with the judges, lawyers, and police officers, were misapplying the Transportation Code and the advice given to Briggs at the time was in fact erroneous.

Instead of taking the reasoning behind the *McNeely* and *Villarreal* opinions into account (i.e. they did not create new law, but relied on well-established constitutional law), the state relies only on case law that was available at that time of Appellant's plea that supports its own position. Thus, there are two possibilities

regarding counsel's advice to Ms. Briggs in 2012. Either Mr. Piker did not advise Briggs on the well-established Fourth Amendment law or Mr. Piker advised her based on an erroneous interpretation of the Transportation Code that was being followed at the time. Either route this court follows will arrive at the same conclusion: Appellant received erroneous advice that caused her to plea when, absent the advice, she would have wanted a trial.

The state's reliance on *Brady v. United States*, 397 U.S. 742, 757 (1970) is also misplaced and not relevant to the issue in this case. In that case, Brady filed a motion to attack his guilty plea and sentencing pursuant to 28 U.S.C.A. § 2255. Although the death penalty provision of the crime he pleaded guilty to had later been found unconstitutional, the Supreme Court, in denying relief, found that there were other factors considered by the court regarding Brady's decision to plead guilty apart from the change in law; namely, his co-defendant elected to plead guilty and was going to testify against him. *Id.* at 743 ["Upon learning that his codefendant, who had confessed to the authorities, would plead guilty and be available to testify against him, petitioner changed his plea to guilty."] Specifically, the District Court judge who initially heard Brady's motion found: "[P]etitioner pleaded guilty 'by reason of other matters and not by reason of the statute' or because of any acts of the trial judge." *Id*. at 745. In Briggs's case the blood draw issue was the sole reason that

she elected to plead guilty. There were no other intervening or superseding factors that caused her to plead guilty.

*Brady* is also inapplicable because it addressed a sentencing issue and not a guilt/innocence issue. "Brady's claim is of a different sort: that it violates the Fifth Amendment to influence or encourage a guilty plea by opportunity or promise of leniency and that a guilty plea is coerced and invalid if influenced by the fear of a possibly higher penalty for the crime charged if a conviction is obtained after the State is put to its proof." *Brady v. United States*, 397 U.S. 742, 750–51 (1970). Briggs' plea did not provide her with a guaranteed term of years – her plea was open to the full range of punishment. This is an important distinction in *Brady* because the only portion of the statute that was found unconstitutional in that case was the death penalty sentencing portion. The Supreme Court declined to find "that a guilty plea is compelled and invalid under the Fifth Amendment whenever motivated by the defendant's desire to accept the certainty or probability of a lesser penalty rather than face a wider range of possibilities extending from acquittal to conviction and a higher penalty authorized by law for the crime charged." *Id.*

This Court has also explained that *Brady* was a case "in which the Court held that, after the entry of a guilty plea which was otherwise voluntary and untainted by ineffective assistance of counsel, a defendant could not collaterally attack the judgment in federal court on a theory that the guilty plea was coerced because of

constitutional violations **that were not the basis of the judgment**." *Young v. State*, 8 S.W.3d 656, 659 (Tex. Crim. App. 2000)(emphasis added). This distinction is also important – the judgment in that case was for non-death penalty and that portion of the statute was not found unconstitutional. In this case, trial counsel and Briggs both agreed that the basis of the plea, and therefore judgment, was the blood evidence coming in at trial.

The State's brief also argues that the Supreme Court granted certiorari in *McNeely* in order to resolve a "split in authority among state courts as to whether a DWI arrest presented a *per se* exigency to a police officer", arguing that trial counsel's "advice did not offend the Sixth Amendment because his understanding of DWI blood draws was shared by multiple high courts throughout the nation." *State's Brief p. 18.* However, Piker's advice did not relate specifically to whether the blood was drawn under exigent circumstances – his advice was based solely on the belief that the mandatory provision of the Transportation Code allowing the officers to draw Briggs' blood was valid and that the results were admissible. But, this argument is a fallacy because it is based on the false premise that if other people are doing it, it must be a valid application of the law. If this premise were true in the law, then a statute that has been around for years would never be found unconstitutional.

## C. Similar Reasoning From Appellate Courts

Similar to the reasoning Briggs applies in this case, this Court has reversed guilty pleas based on due process violations after finding out that the breath test evidence was determined to be unreliable after the defendant was sentenced: "Applicant contends that he was denied due process and a fair trial, because his charge was based on breath test evidence that was unreliable…[T]he technical supervisor in charge of the breath test instruments that produced Applicant's breath test results, was convicted of tampering with governmental records relating to breath test machine inspection and maintenance during the period applicable to Applicant's case." *Ex parte Rosales*, 2010 WL 1794937, 1 (Tex.Crim.App.,2010). The First Court of Appeals also reversed a conviction based on a similar due process issue: "At the time of the original plea, the State represented to Rios that it had valid evidence which appeared to any objective person to be formidable: the results of an intoxilyzer test, with two readings nearly double the legal limit." *Rios v. State*, 377 S.W.3d 131, 137 (Tex.App.–Houston [1 Dist.],2012).

The admissibility of the blood alcohol content was misrepresented to Briggs through no fault of her own. Had she known that the blood draw was not in accordance with the fourth amendment, she would not have pleaded no contest, but would have instead insisted on going to trial. Although in *Rosales* and *Rios* the due process violation consisted of a *Brady v. Maryland[1]* discovery/disclosure issue,

---

[1] 373 U.S. 83 (1963).

Appellant's due process violation is due to the fact that her important fourth amendment right was violated at the time her blood was drawn without a warrant, but she and counsel were unaware that the mandatory blood draw as applied to her case was an unlawful search and seizure. Mr. Piker also agreed that he would have advised Briggs to take a different strategy. At the very least, suppressing the blood would have provided Mr. Piker and Briggs more ammunition in negotiating a different plea bargain agreement. *See McNeil v. State*, 443 S.W.3d 295, 303 - 304 (Tex.App.–San Antonio, 2014, pet. ref'd).

### D. The Timing of the *McNeely* Opinions

#### a. The Warrantless Blood Draw Violated the Fourth Amendment at the Time of the Draw

The fact that the appellate court opinions concerning the Texas mandatory blood draw provisions in the Transportation Code came after her sentencing are irrelevant to whether or not her plea was voluntary and in accordance with due process. These provisions in the Transportation Code as applied to cases like Appellant's have always been unconstitutional and therefore at the time the blood was drawn, it was done in violation of the laws. Similarly, when a penal code statute is deemed unconstitutional a conviction is reversed as if it never happened:

> "For this reason, a person may always obtain relief from an indictment or a conviction based on a penal statute that has been previously declared unconstitutional. He may obtain relief in a pretrial motion or writ; he may obtain relief on direct appeal; he

23

may obtain relief in a habeas corpus proceeding, and it matters not whether he had ever previously objected to the statute or its application to him. The unconstitutional statute has disappeared in a puff of smoke. No one can be convicted for a non-existent crime and no prior conviction based upon that unconstitutional statute is valid." *Ex Parte Chance*, 439 S.W.3d 918, 919 (Tex.Crim.App.,2014).

**b. *McNeely and Its Progeny Apply Retroactively in This Case***

The State also argues that the lower court applied *McNeely* and its progeny retroactively in evaluating counsel's advice at the time of the plea. While the lower court did do this, this is only part of its holding. The lower court first found that *McNeely* and its progeny did not create a new rule. The lower court also found that even if a new rule was created by *McNeely*, that law would apply retroactively to cases that were pending on appeal. Briggs' case is one of those cases that was pending at the time. *Briggs* at 599["Moreover, even were we to conclude that *McNeely* created a new rule, "newly announced rules of constitutional criminal procedure must apply 'retroactively to all cases, state or federal, pending on direct review or not yet final, with no exception.'" *Davis v. U.S.*, 564 U.S. 229, 243, 131 S.Ct. 2419, 180 L.Ed.2d 285 (2011) (quoting *Griffith v. Kentucky*, 479 U.S. 314, 328, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987))"].

Essentially, the State is asking this court to first find that *McNeely* and its progeny created a new rule and then find that the new rule of constitutional criminal procedure should not apply retroactively to all cases pending on direct review or not

24

yet final. This Court would have to disregard well-established procedural precedent to side with the State.

## Conclusion

The section of the Texas Transportation Code that the officer relied on to obtain Appellant's blood has been deemed to be a warrantless search of a person that is only reasonable, thus legal, if it falls within a recognized exception. In this case, Appellant's blood was drawn, as detailed in the police report and as the evidence from her sentencing proved, pursuant to the "mandatory blood draw" provisions in the Transportation Code. 5RR63, 88-89; 9RR56-57. Thus, the blood was unlawfully obtained unless it was conducted pursuant to a recognized exception.

The admissibility of the blood alcohol content was *misrepresented* to Appellant through no fault of her own. Had she known that the blood draw was not in accordance with the fourth amendment, she would not have pleaded no contest but would have instead insisted on going to trial.

Because *McNeely* and the cases that followed did not create a new rule, but render the mandatory provisions of the Transportation Code to violate the Fourth Amendment's warrant requirement unless an exception applies, then the Transportation Code provision that the officer relied on to draw her blood was unconstitutional as applied from its inception. Because the blood evidence was the sole factor that led her to plead no contest, her reliance on an unconstitutional

provision, and the misrepresentation of the admissibility of evidence, renders her plea in violation of due process because it was not a knowing, voluntarily, and intelligent waiver of her rights.

The testimony at the motion for new trial established that had the law regarding the blood evidence been explained to her, Briggs would not have pleaded no contest, but instead would have insisted on filing a motion to suppress and proceeding with trial.

The fact that the appellate court opinions concerning the Texas mandatory blood draw provisions in the Transportation Code came after her sentencing are irrelevant to whether or her plea was voluntary and in accordance with due process. These provisions in the Transportation Code as applied to cases like Appellant's have always been unconstitutional and therefore at the time the blood was drawn, it was done in violation of the laws. Similarly, when a penal code statute is deemed unconstitutional a conviction is reversed as if it never happened.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Appellant prays that this court affirm the lower court's decision and reverse Appellant's conviction and sentence and remand for a new trial.

Respectfully submitted:

*/s/ Dayna L. Jones*
Dayna L. Jones

26

Bar No.  24049450
Law Office of Dayna Jones
1800McCullough Ave.
San Antonio, Texas 78212
(210) 255-8525 office
(210) 223-3248 fax

Attorney for Appellant/Respondent,
SANDRA BRIGGS

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Appellant's Brief was electronically delivered to Rico Valdez, Assistant District Attorney at the Bexar County District Attorney's Office, at ricov@bexar.org on June 4, 2018.

*/s/ Dayna L. Jones*
DAYNA L. JONES

## CERTIFICATE OF COMPLIANCE

Pursuant to Texas Rule of Appellate Procedure 9.3(i)(1) and (3), I certify that, according to Microsoft Word's word count, this document contains **7,245** words.

*/s/Dayna L. Jones*
DAYNA L. JONES