

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-0340-14

### RYLAND SHANE ABSALON, Appellant

### v.

### THE STATE OF TEXAS

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE THIRTEENTH COURT OF APPEALS
### TARRANT COUNTY

MEYERS, J., delivered the opinion of the Court, in which KEASLER, HERVEY, ALCALA, RICHARDSON, and YEARY, JJ., joined. KELLER, P.J., and JOHNSON and NEWELL, JJ., concurred.

## O P I N I O N

In 2012, Appellant was convicted of the murder of Ginger Hayden, which occurred in 1984. During Appellant's trial, several people who had participated in substance-abuse treatment with him were permitted to testify that he had confessed to them that he had committed the murder. Appellant had filed a pretrial motion to suppress the testimony on the ground that, because his statements were made during the course of voluntary substance-

abuse treatment, Article 38.101 of the Texas Code of Criminal Procedure and Rule of Evidence 509(b) made them inadmissible. The trial court, however, denied his motion because his participation was part of a court-ordered condition of probation and, therefore, not voluntary. The court of appeals affirmed the trial court's ruling and we granted Appellant's petition for discretionary review to determine whether the court of appeals erred in concluding his participation in the substance-abuse program was involuntary. *Absalon v. State*, No. 13-12-00666-CR, 2014 Tex. App. LEXIS 1583 (Tex. App.–Corpus Christi Feb. 13, 2014).

## BACKGROUND

In 1986, Appellant pled guilty to a charge of criminal mischief. He was granted probation and, as set out in his plea agreement, one of the conditions included participation in and completion of the Straight, Inc., substance-abuse program. He participated in the program, and his probation expired in 1987 without any further proceedings.

In 2009, Detective Jose Hernandez of the Fort Worth Police Department was given the responsibility of identifying the cold cases that could benefit most from DNA testing. One of the cases he reviewed was the murder of Ginger Hayden, which had occurred in 1984 but had gone unsolved. Several items of evidence were available for DNA analysis, so Detective Hernandez submitted them for testing. The DNA analysis led detectives to Appellant, who was arrested in 2010 and charged with Ginger Hayden's murder.

Upon Appellant's arrest, several people who had participated in substance-abuse

treatment with him at Straight, Inc., came forward. These individuals stated that Appellant confessed to committing the murder during his participation in the Straight, Inc., program. One of these individuals was Shawn Garrett, who had arranged for Appellant to stay in his parents' home during the program because Straight, Inc., required newcomers to go home with participants who were further along in their treatment. The two men slept in the same room, and Garrett testified that during some of their conversations at night, Appellant admitted to murdering a girl. Garrett testified that Appellant told him that a girl had embarrassed him by rejecting him, so Appellant got into her apartment through a window, hid in her closet, and waited for her to fall asleep. Once she did, he came out of the closet, went over to the bed, and stabbed the girl to death. Appellant told Garrett that he believed he would never be found out because he had done such a good job covering it up. Garrett testified that he had never told anyone what Appellant had admitted, but decided to come forward with it after Appellant's arrest, because he had seen Ginger Hayden's mother on television.

Other Straight, Inc., participants who came forward with information were Stephanie Knight and Michelle Valencia. They both testified that during a group session at Straight, Inc., Appellant stood up and told the group that he had killed a girl by stabbing her multiple times. Knight remembered more specific details about the confession, recalling that Appellant said that he had hid in the woman's closet and attacked her on her bed. In 2010, Knight was contacted by police and told them her experience. Valencia contacted the police

on her own, after seeing Appellant's arrest in the news.

Before the trial, Appellant filed a motion to suppress the testimony about these alleged confessions on the grounds that they were made during the course of voluntary substance-abuse treatment. If this were the case, the statements would be inadmissible according to Texas Rule of Evidence 509(b) and Texas Code of Criminal Procedure article 38.101. The trial court, however, found that, because Appellant was court-ordered to be in the Straight, Inc., program, he was not being treated voluntarily and the testimony about his statements during the group session was, therefore, admissible. The court also found that Appellant's communication with Garrett was not associated with treatment and that Garrett himself was not "involved with the treatment of Defendant." The trial court, therefore, denied the motion to suppress, and the jury heard the testimony outlined above. The jury found Appellant guilty of capital murder and sentenced him to life imprisonment.

Appellant appealed, arguing, among other issues, that the trial court erred in admitting the testimony about the confessions he allegedly made during his substance-abuse treatment because he was "being treated voluntarily." *Absalon*, 2014 Tex. App. LEXIS 1583 at *1. Appellant contended that, because he voluntarily entered the plea agreement that required his completion of the Straight, Inc., program, he was "being treated voluntarily" under article 38.101 and Rule 509(b). *Id.* at *28. He pointed out that he could have rejected the bargain and proceeded to trial, but chose not to. *Id*.

The court of appeals found this argument unconvincing. Because Appellant was

ordered by a court to complete the substance-abuse program, the court of appeals could not conclude that he was participating "voluntarily," and held that the trial court did not abuse its discretion in denying the motion to suppress. *Id*. at *28-*29.

## ARGUMENTS OF THE PARTIES

Appellant asserts that his participation in the program was voluntary because his plea bargain was a contract entered into on his own volition. He argues that the court of appeals did not consider his argument, based on *Puckett v. United States*, 556 U.S. 129, 137 (2009), that plea bargains are voluntary bilateral contracts. Further, Appellant was promised by Straight, Inc., that his statements would be confidential, and he contends that the trial court effectively embraced these assurances as guarantor.

Appellant goes on to argue that the court of appeals was incorrect in its reliance on *In Interest of G.K.H.*, 623 S.W.2d 447 (Tex. App.–Texarkana 1981), in determining that his participation was not voluntary. Appellant explains that because *In re G.K.H.* was a juvenile case and did not involve a plea bargain, it is distinguishable from his case. Here, Appellant could have gone to trial instead of entering the plea bargain, but instead he voluntarily chose to contract with the State for his plea bargain.

The State, however, makes a distinction between the plea bargain and the subsequent court-ordered condition of probation. The State points out that the plea agreement stated that Appellant would only participate in the program, and that the requirement that he actually complete it was added as a condition of probation, without objection, by the trial court. The

State argues that once the court accepted the agreement and made completion of the program a condition of probation, Appellant's role then became an involuntary one.

The State also asserts that, even though Appellant voluntarily entered into the plea agreement, he was simply avoiding the harsher sentence of imprisonment. Although this might appear to be a free choice, the State says that there was really only one option for Appellant–to complete the program. His situation is not comparable to that of an individual who realizes he has a substance-abuse problem and then willingly seeks help for it. Further, the State points out, unlike a voluntary patient, Appellant had no choice but to participate in the program or to face incarceration. Therefore, it was compelled by the trial court and not a voluntary choice.

## STANDARD OF REVIEW

We give almost total deference to the trial court's determination of questions of fact and will affirm the ruling if it is supported by the record and is correct under any theory of applicable law. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997); *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990). Mixed questions of law and fact that do not turn on the credibility of the witness, as well as all purely legal questions will be reviewed de novo. *Id*.; *State v. Johnson*, 336 S.W.3d 649, 657 (Tex. Crim. App. 2011).

## ANALYSIS

Article 38.101 of the Texas Code of Criminal Procedure provides that "[a] communication to any person involved in the treatment or examination of drug abusers by

a person being treated voluntarily or being examined for admission to voluntary treatment for drug abuse is not admissible." Texas Rule of Evidence 509(b) provides that

> [t]here is no physician-patient privilege in criminal proceedings. However, a communication to any person involved in the treatment or examination of alcohol or drug abuse by a person being treated voluntarily or being examined for admission to treatment for alcohol or drug abuse is not admissible in a criminal proceeding.

Therefore, if Appellant was participating in the Straight, Inc., program voluntarily, it might have been error to allow his statements to be admitted during his trial.

Appellant is correct in asserting that a plea bargain is essentially a contract between the defendant and the State. *Puckett*, 556 U.S. at 137; *Speth v. State*, 6 S.W.3d 530, 534 (Tex. Crim. App. 1999). Both parties must enter the agreement voluntarily and knowingly, and, although it is not binding on the court, once a judge accepts the bargain, both parties are bound to it. *Moore v. State*, 295 S.W.3d 329, 331 (Tex. Crim. App. 2009); TEX. CODE CRIM. PROC. art. 26.13(a)(2). Once the trial court accepts the agreement, the State may not withdraw its offer. *Moore*, 295 S.W.3d at 332. However, if the court rejects the agreement, the defendant is then allowed to withdraw his guilty plea and the State may then withdraw its offer. TEX. CODE CRIM. PROC. art. 26.13(a)(2). Once the parties are bound to their plea agreement, if the State does not meet its obligations, the defendant is entitled to a remedy. *Puckett*, 556 U.S. at 137. If the defendant breaches the agreement, he would be subject to arrest and possible imposition of a prison sentence.

Although Appellant entered the plea-bargain "contract" voluntarily, this does not mean that he was a voluntary participant at Straight, Inc., for the purposes of Rule 509 and

article 38.101. When Appellant entered into the plea agreement, he was already subject to the court's authority because he was going to be tried on the criminal mischief charge. He was simply making the choice between entering a plea bargain or proceeding to trial. While he voluntarily agreed to the specific conditions of probation, including the participation in the substance-abuse treatment, he did so only to avoid a trial and incarceration. Once the court accepted the agreement, it ordered Appellant to participate in and complete the program, and he would have been incarcerated if he did not do so. This is not comparable to an individual who voluntarily enters substance-abuse treatment. Rule 509(b) and article 38.101 were meant to protect those individuals who want to better themselves and who seek help on their own volition–not those who use substance-abuse treatment as a bargaining chip to avoid a criminal trial.

Further, an individual who is being treated for substance abuse voluntarily can leave the program at any time and return to their home. If Appellant had left the program, however, rather than returning home, he would have gone to jail. Although Appellant argues that he voluntarily chose to attend the substance-abuse program when he easily could have chosen to be incarcerated instead, we agree with the State that this is not actually a free choice. When Appellant's only alternative to participation in the program was incarceration, there was effectively no choice at all. *See Tamez v. State*, 534 S.W.2d 686, 692 (Tex. Crim. App. 1976) ("The choice to reject probation and go to prison or accept the probationary condition was really no choice at all. It was in legal effect coerced.").

Finally, we do not find any support for Appellant's argument that the trial court stood as guarantor of the plea-bargain contract and that it "must have known" promises of confidentiality were a feature of the Straight, Inc., program. While a breach of the agreement would certainly have entitled Appellant to a remedy, the agreement stated nothing about confidentiality at the substance-abuse program. While it was misleading of Straight, Inc., to convey to Appellant that his inculpatory statements were completely confidential, it was likely their standard practice as most patients were there voluntarily, and the court never embraced these assurances, as Appellant claims.

## CONCLUSION

Appellant's participation in the Straight, Inc., substance-abuse program, although bargained for as part of a plea agreement, was not voluntary for the purposes of Texas Rule of Evidence 509(b) and article 38.101 of the Texas Code of Criminal Procedure. Therefore, it was not error for the trial court to admit the testimony of other participants in the program who heard Appellant admit to the murder. For the foregoing reasons, we affirm the judgment of the court of appeals.

Delivered: April 29, 2015

Publish