# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

### NO. 03-17-00158-CR

**Patricia Latavia Wright, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF HAYS COUNTY, 428TH JUDICIAL DISTRICT NO. CR-15-0744, THE HONORABLE WILLIAM R. HENRY, JUDGE PRESIDING

### M E M O R A N D U M   O P I N I O N

A jury convicted appellant Patricia Latavia Wright of forgery, *see* Tex. Penal Code § 32.21(b), (e), and assessed her punishment at confinement for four and one-half years in the Texas Department of Criminal Justice, *see id.* § 12.34. On appeal, appellant challenges the trial court's denial of her motion to suppress. We affirm the judgment of conviction.

### BACKGROUND

On the night of September 3, 2015, at around 10:30 p.m., Daniel Crook and Patrick Aubry, patrol officers with the San Marcos Police Department, were "guarding" a hotel room at the Roadway Inn in San Marcos for the Hays County Narcotics Task Force.[1] The officers had

---

[1] The record reflects that the task force was determining whether to seek a search warrant for the room, which was being surveilled as part of an investigation for possible drug trafficking. The two patrol officers, however, were not surveilling the target room, only "staying there to make sure no one came in and out."

parked their patrol cars in regular parking spots and were standing on the sidewalk near the target room. They observed a silver Mercury pull into the hotel parking lot. The car drew their attention because it was driving toward the target room, slowed "noticeably" when it neared the spot where the officers were standing, and then sped up again. The officers decided to make contact with the driver to ascertain if the individual was involved in the activity in the target room.

Appellant was the driver and sole occupant of the car. The officers approached the car on foot from the passenger side, Officer Crooks walking behind Officer Aubry. As they approached, both officers used flashlights "to see what [they were] walking up on." Although both officers were in uniform, appellant was apparently unaware that the men were police officers.[2] Officer Aubry said "Ma'am" as he approached, and the evidence indicates that appellant heard him because she stopped her car and rolled down the passenger side window. Through the open window, Officer Aubry asked appellant who she was there to see and what she was doing there. As the officers made contact with appellant, they saw a bag of marijuana in appellant's lap. Officer Crooks then walked behind appellant's car to the driver's side.

After the officers saw the marijuana in appellant's lap, they detained her for further investigation. The police eventually searched appellant's car and discovered a counterfeit twenty-dollar bill in the center console. The police also discovered that appellant had an outstanding arrest warrant. Appellant was arrested at the scene.

---

[2] On a video recording of later events, appellant can be heard saying, "There was a light flashing, I mean I didn't even know they were the laws." Officer Crooks explained in his testimony that "the laws" is a common street term for the police.

Subsequently, appellant was indicted for forgery based on her possession of a forged twenty-dollar bill. She filed a pretrial motion to suppress, which was considered during the jury trial. In her motion and at the suppression hearing, appellant asserted that she was unlawfully detained and, therefore, the evidence against her was obtained in violation of the Fourth Amendment. After hearing testimony outside the presence of the jury, the trial court denied appellant's motion to suppress without making written findings of fact or conclusions of law. The jury found appellant guilty of forgery as charged in the indictment and, after hearing further evidence during the punishment phase, assessed appellant's punishment at imprisonment for four and one-half years. The trial court sentenced appellant in accordance with the jury's verdicts. This appeal followed.

## DISCUSSION

In a single point of error, appellant challenges the trial court's denial of her motion to suppress.

We review a trial court's ruling on a motion to suppress evidence for an abuse of discretion, *Arguellez v. State*, 409 S.W.3d 657, 662 (Tex. Crim. App. 2013); *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006), and overturn the ruling only if it is outside the zone of reasonable disagreement, *State v. Story*, 445 S.W.3d 729, 732 (Tex. Crim. App. 2014); *Dixon*, 206 S.W.3d at 590. We apply a bifurcated standard of review, *State v. Rodriguez*, 521 S.W.3d 1, 8 (Tex. Crim. App. 2017); *Weems v. State*, 493 S.W.3d 574, 577 (Tex. Crim. App. 2016), giving almost total deference to a trial court's findings of historical fact and credibility determinations that are supported by the record, but reviewing questions of law de novo, *Furr v. State*, 499 S.W.3d 872, 877 (Tex. Crim. App. 2016); *Weems*, 493 S.W.3d at 577.

We view the evidence in the light most favorable to the trial court's ruling, *Furr*, 499 S.W.3d at 877; *State v. Robinson*, 334 S.W.3d 776, 778 (Tex. Crim. App. 2011), and uphold the ruling if it is correct on any theory of law applicable to the case, *Weems*, 493 S.W.3d at 577; *Absalon v. State*, 460 S.W.3d 158, 162 (Tex. Crim. App. 2015), even if the trial judge made the ruling for a wrong reason, *Story*, 445 S.W.3d at 732. When the trial court does not make explicit findings of fact, we infer the necessary factual findings that support the trial court's ruling if the record evidence, viewed in the light most favorable to the ruling, supports these implied fact findings. *Johnson v. State*, 414 S.W.3d 184, 192 (Tex. Crim. App. 2013); *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008). In our review, the prevailing party "is afforded the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from it." *Matthews v. State*, 431 S.W.3d 596, 601 n.5 (Tex. Crim. App. 2014).

The Fourth Amendment protects against unreasonable searches and seizures by government officials. *See* U.S. Const. amend. IV; *Hubert v. State*, 312 S.W.3d 554, 560 (Tex. Crim. App. 2010). Not every encounter between a civilian and a police officer implicates the Fourth Amendment. *Florida v. Bostick*, 501 U.S. 429, 434 (1991). There are three distinct types of police-citizen interactions: (1) consensual encounters that do not implicate the Fourth Amendment; (2) investigative detentions that are Fourth Amendment seizures of limited scope and duration, which must be supported by a reasonable suspicion of criminal activity; and (3) arrests, the most intrusive of Fourth Amendment seizures, which are only constitutional if supported by probable cause. *Furr*, 499 S.W.3d at 877; *Wade v. State*, 422 S.W.3d 661, 667 (Tex. Crim. App. 2013); *State v. Woodard*, 341 S.W.3d 404, 410–11 (Tex. Crim. App. 2011).

4

Appellant contends that the two San Marcos police officers detained her when they approached her car—on foot, in uniform, carrying flashlights—and Officer Aubry said, "Ma'am." This detention, she asserts, was not supported by reasonable suspicion and was, therefore, an unlawful seizure under the Fourth Amendment. She argues that this constitutional violation required the suppression of all the evidence obtained during the encounter, including the counterfeit twenty-dollar bill, the possession of which formed the basis of the instant charge. In contrast, the State asserts, as it did before the trial court, that appellant was not detained but involved in a consensual encounter with the officers.

A consensual encounter "takes place when an officer approaches a citizen in a public place to ask questions, and the citizen is willing to listen and voluntarily answers." *Crain v. State*, 315 S.W.3d 43, 49 (Tex. Crim. App. 2010) (citing *State v. Perez*, 85 S.W.3d 817, 819 (Tex. Crim. App. 2002); *Corbin v. State*, 85 S.W.3d 272, 276 (Tex. Crim. App. 2002)). A consensual encounter does not implicate the Fourth Amendment because it is a consensual interaction, and the citizen is free to terminate the encounter at any time. *Woodard*, 341 S.W.3d at 411; *Crain*, 315 S.W.3d at 49; *see Bostick*, 501 U.S. at 434 (so long as citizen feels that he is free to disregard officer and go about his business, officer may approach and ask questions without implicating Fourth Amendment); *Florida v. Royer*, 460 U.S. 491, 498 (1983) (highlighting that in consensual encounters, individuals "may decline to listen to the questions at all and may go on [their] way").

These types of encounters do not require any justification on the officer's part; an officer may initiate a consensual encounter without any indicia of criminal activity. *United States v. Mendenhall*, 446 U.S. 544, 553 (1980); *State v. Castleberry*, 332 S.W.3d 460, 466 (Tex. Crim.

5

App. 2011); *see United States v. Drayton*, 536 U.S. 194, 201 (2002) (even when police officer lacks suspicion of criminal activity he may, among other things, pose questions to suspect so long as he does not induce suspect's cooperation by coercive means); *State v. Velasquez*, 994 S.W.2d 676, 678 (Tex. Crim. App. 1999) (explaining that probable cause "does not apply to a police officer's approaching a citizen to engage in conversation"). Furthermore, officers may be "as aggressive as the pushy Fuller-brush man at the front door, the insistent panhandler on the street, or the grimacing street-corner car-window squeegee man." *Garcia-Cantu*, 253 S.W.3d at 243; *see Wade*, 422 S.W.3d at 667 ("Such consensual encounters may be uncomfortable for a citizen, but they are not Fourth Amendment seizures."); *Shimko v. State*, No. 03-13-00403-CR, 2015 WL 7721962, at *2 (Tex. App.—Austin Nov. 25, 2015), *aff'd*, No. PD-1639-15, 2017 WL 604065 (Tex. Crim. App. Feb. 15, 2017) (mem. op., not designated for publication) ("Consensual encounters may involve embarrassment and inconvenience but not official coercion.").

Only when the implication arises that a police officer's authority cannot be ignored, avoided, or ended, does a Fourth Amendment seizure occur. *Castleberry*, 332 S.W.3d at 466–67; *Garcia-Cantu*, 253 S.W.3d at 243 ("It is the display of official authority and the implication that this authority cannot be ignored, avoided, or terminated, that results in a Fourth Amendment seizure."). A person is "seized" when an officer, "by means of physical force or show of authority, has in some way restrained the liberty of a citizen." *Mendenhall*, 446 U.S. at 552 (quoting *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968)); *see Wade*, 422 S.W.3d at 668 "([I]f an officer through force or a show of authority succeeds in restraining a citizen in his liberty, the encounter is no longer consensual; it is a Fourth Amendment detention or arrest, subject to Fourth Amendment scrutiny."). Consequently,

6

an investigative detention, which occurs when a citizen yields to a police officer's "show of authority under a reasonable belief that he is not free to leave," is a seizure. *Crain*, 315 S.W.3d at 49; *accord Johnson v. State*, 912 S.W.2d 227, 235 (Tex. Crim. App. 1995). Such seizures implicate a citizen's rights under the Fourth Amendment; thus, officers must have legal justification to conduct investigative detentions. *Woodard*, 341 S.W.3d at 411. The detaining officer must have a reasonable suspicion that the citizen is, has been, or is about to be engaged in criminal activity. *Johnson*, 414 S.W.3d at 192; *Castleberry*, 332 S.W.3d at 466.

To determine whether an interaction between a police officer and a citizen rises to the level of an investigative detention, courts must focus on whether "the officer conveyed a message that compliance with the officer's request was required." *Crain*, 315 S.W.3d at 51; *see Garcia-Cantu*, 253 S.W.3d at 243 ("At bottom, the issue is whether the surroundings and the words or actions of the officer and his associates communicate the message of 'We Who Must Be Obeyed.'"). There is no bright-line rule dictating when a consensual encounter becomes a detention. *Furr*, 499 S.W.3d at 877; *Wade*, 422 S.W.3d at 667; *Woodard*, 341 S.W.3d at 411; *see Garcia-Cantu*, 253 S.W.3d at 243 ("Each citizen-police encounter must be factually evaluated on its own terms; there are no *per se* rules."). Courts must examine the totality of the circumstances to determine whether a reasonable person would have felt free to ignore the officer's request or to terminate the consensual encounter. *Furr*, 499 S.W.3d at 877; *Wade*, 422 S.W.3d at 667; *Crain*, 315 S.W.3d at 49; *see Garcia-Cantu*, 253 S.W.3d at 244 ("The officer's conduct is the primary focus, but time, place, and attendant circumstances matter as well."). "Formulated a different way, a Fourth Amendment seizure occurs when there is application of physical force or, where such is

absent, a submission to an assertion of authority." *Furr*, 499 S.W.3d at 877–78; *accord Wade*, 422 S.W.3d at 667–68.

The test is whether a reasonable person in the citizen's position "would have felt free to decline the officer's requests or otherwise terminate the encounter." *Crain*, 315 S.W.3d at 51. The "reasonable person" is assumed "to have considerable fortitude." *Wade*, 422 S.W.3d at 667 n.19. She knows her rights and feels free to exercise them, is not intimidated by the police, and "rests secure in the knowledge that . . . the police cannot legally draw an inference of criminality" from her refusal to cooperate. *Wade*, 422 S.W.3d at 667 n.19 (quoting Daniel J. Steinbock, *The Wrong Line Between Freedom and Restraint: The Unreality, Obscurity, and Incivility of the Fourth Amendment Consensual Encounter Doctrine*, 38 SAN DIEGO L. REV. 507, 563 (2001)). Furthermore, the test to determine whether a person has been detained is objective; it does not rely on the subjective belief of the detainee or the police. *Furr*, 499 S.W.3d at 878; *Wade*, 422 S.W.3d at 668.

Instances where a person's interaction with police amounts to a seizure—rather than a consensual encounter—include the threatening presence of several officers, the officer's display of a weapon, physical touching of the citizen by the officer, the officer's words or tone of voice indicating that compliance with the officer's request might be compelled, the use of flashing lights or sirens, or the blocking of a suspect's vehicle. *See Mendenhall*, 446 U.S. at 554; *Crain*, 315 S.W.3d at 49–50; *Garcia-Cantu*, 253 S.W.3d at 243. Absent this type of evidence, otherwise inoffensive contact between a citizen and a police officer cannot, as a matter of law, amount to a seizure of that person. *Mendenhall*, 446 U.S. at 555.

Whether the facts surrounding the interaction between an officer and a citizen constitute a consensual encounter or a Fourth Amendment detention is subject to de novo review. *Furr*, 499 S.W.3d at 877; *Johnson*, 414 S.W.3d at 192; *Garcia-Cantu*, 253 S.W.3d at 241. In this case, the historical facts elicited at the suppression hearing were not disputed and thus are not at issue here. The issue is whether these uncontroverted facts establish that appellant was seized pursuant to an investigative detention or, instead, show that the interaction between appellant and the officers was a consensual encounter. In denying appellant's motion to suppress, the trial court implicitly concluded that the interaction was a consensual encounter. The record supports that conclusion.

There is nothing in the record in this case to indicate that appellant submitted to a show of force or authority by the officers that left her no choice but to stop her car and remain in the hotel parking lot. First, the evidence does not reflect "the threatening presence of several officers." Although two officers were involved in the interaction with appellant, there is no evidence that they converged on appellant's car or surrounded it. Instead, the evidence reflects that they approached the car—on foot—one behind the other, and then Officer Crooks moved to the driver's side to more directly interact with appellant after she stopped her car. Further, there is no evidence that the officers used sirens, flashing lights, or a spotlight to stop appellant's vehicle. Although the record shows that the officers had flashlights, there is no evidence that either officer used the flashlight to flag down appellant. Rather, the evidence indicates that the officers used their flashlights for illumination purposes—to see into the car to ensure their safety and to make visual contact with appellant. The testimony at the suppression hearing reflected that the officers did not shine their

9

lights directly at or into appellant's face. Moreover, there is no evidence that either officer used any type of authoritative signal, vocal tone, or gesture in an effort to detain appellant. The only verbal communication before appellant stopped her car was Officer Aubry saying "Ma'am."

In addition, the evidence demonstrates that there was no display of a weapon, no physical touching, and no evidence that, once stopped, either officer blocked appellant's vehicle from leaving the hotel parking lot. Neither officer placed himself in front of appellant's car, and Officer Crooks testified that he moved to the driver's side of the car by going around the back of appellant's car; her forward movement was not restricted. The record is void of any evidence indicating that the officers' approach of appellant interfered with appellant's freedom of movement in any way. In addition, prior to the officers seeing the bag of marijuana on appellant's lap, there was no manifestation of an intent to formally detain appellant. The testimony at the hearing reflected, on several occasions, that, had the officers not seen appellant in possession of drugs and then discovered the outstanding arrest warrant for her, appellant would have been free to leave.

The evidence reflects that the officers made contact with appellant simply to ascertain her reason for being at the hotel and to determine if she was associated with the target room they were monitoring. This questioning, in the manner in which the officers conducted it and under the circumstances present here, did not violate—or even implicate—appellant's Fourth Amendment rights. *See Royer*, 460 U.S. at 497–98 (holding that police officers "do not violate the Fourth Amendment by merely approaching an individual" and asking questions); *Wade*, 422 S.W.3d at 667 ("Police officers are as free as any other citizen to approach citizens to ask for information or

10

cooperation."); *Castleberry*, 332 S.W.3d at 466 ("An officer is just as free as anyone to stop and question a fellow citizen.").

To suppress evidence on an alleged Fourth Amendment violation, the defendant bears the initial burden of producing evidence that rebuts the presumption of proper police conduct. *Amador v. State*, 221 S.W.3d 666, 672 (Tex. Crim. App. 2007); *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005); *Russell v. State*, 717 S.W.2d 7, 9 (Tex. Crim. App. 1986). A defendant satisfies this burden by establishing that a search or seizure occurred without a warrant. *Amador*, 221 S.W.3d at 672; *Ford*, 158 S.W.3d at 492; *Bishop v. State*, 85 S.W.3d 819, 822 (Tex. Crim. App. 2002).

In this case, while the record reflects that the initial contact between appellant and the two police officers occurred without a warrant, a review of the conduct of the police officers and the circumstances under which it occurred demonstrates that no physical force or show of authority restrained appellant. *See Mendenhall*, 446 U.S. at 552. Thus, the uncontroverted historical facts in the record before us support the trial court's implied conclusion that the initial interaction between appellant and the officers was a consensual encounter not a seizure of appellant. *See Garcia-Cantu*, 253 S.W.3d at 244 ("The question of when an encounter between police officers and a person in a car constitutes a 'seizure' depends on specific facts as to the manner of the encounter, the degree of authority displayed, and all other circumstances surrounding the incident."). Accordingly, we conclude that the trial court did not abuse its discretion in denying appellant's motion to suppress. We overrule appellant's sole point of error.

## CONCLUSION

Having concluded that the trial court did not abuse its discretion by denying appellant's motion to suppress, we affirm the trial court's judgment of conviction.

_____

Cindy Olson Bourland, Justice

Before Justices Puryear, Bourland, and Toth

Affirmed

Filed:   December 18, 2018

Do Not Publish