In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-18-00353-CR
_____

THE STATE OF TEXAS, Appellant

V.

ANDREW SUTTER, Appellee

On Appeal from the County Court at Law No. 1
Montgomery County, Texas
Trial Cause No. 18-30648

MEMORANDUM OPINION

Nearly fifteen years after pleading guilty to an information charging him with assaulting a family member, Andrew Sutter sought to set aside his conviction by filing a writ of habeas corpus.[1] The habeas court granted Sutter's application and the

---

[1] *See* Tex. Code Crim. Proc. Ann. art. 11.072, § 2 (West 2015) (authorizing trial courts, when placing defendants on community supervision, to hear a defendant's application seeking relief from the conviction in a writ of habeas corpus proceeding). In the opinion, we cite the current version of the Texas Code of

1

State appealed.[2] The habeas court found that Sutter was entitled to "relief from the collateral consequences of his conviction in Cause Number 03-184189 . . . in the interests of justice."

After the parties filed their briefs, we abated the appeal to require the habeas court to supplement its written findings in order to clarify the grounds on which that court's conclusions were based. In supplemental findings, the habeas court found that the attorney who represented Sutter in his criminal case had rendered ineffective assistance of counsel and that Sutter would not have pleaded guilty had his attorney fully advised him about all the consequences that could result from his plea.

We conclude the habeas court's findings are not supported by the pleadings and the evidence presented to it in the hearing on Sutter's application. We reverse the habeas court's order in Cause Number 18-30648, which set aside Sutter's conviction in Cause Number 03-184189, and we render judgment denying Sutter's application for habeas relief.[3]

---

Criminal Procedure because the amendments are not relevant to the issues addressed in the appeal.

[2] *Id.* art. 11.072, § 8 (West 2015) (providing the State with a right to appeal rulings made by habeas courts on petitions for habeas corpus filed under article 11.072).

[3] Tex. R. App. P. 43.2(c).

Background

In 2003, Sutter pleaded guilty in Cause Number 03-184189 to an information charging him with misdemeanor-assault against a family member.[4] The court sentenced Sutter to one year in jail, suspended the sentence, and placed Sutter on community supervision for fifteen months.[5]

In 2018, Sutter filed an application seeking habeas relief in the court where he pleaded guilty. In his petition, Sutter alleged he received ineffective assistance of counsel for three reasons. First, Sutter complained that the attorney who represented him in his criminal case failed to inform him that if convicted of assaulting a family member, the conviction would prevent him from possessing firearms.[6] Second,

---

[4] *See* Act of May 29, 1993, 73rd Leg., R.S., ch. 900, § 1.01, sec. 22.01, 1993 Tex. Gen. Laws 3586, 3616-618, *amended by* Act of May 26, 1999, 76th Leg. R.S., ch. 1158, § 1, sec. 22.01(b), 1999 Tex. Gen. Laws 4063, 4063 (also amended 2003, 2005, 2007, 2009, 2013, 2017) (current version at Tex. Penal Code Ann. § 22.01).

[5] Because the judge who placed Sutter on community supervision retired, the judge who granted Sutter's application for habeas relief is a different judge than the one who signed the judgment placing Sutter on community supervision.

[6] We acknowledge Sutter's argument that his 2003 conviction affected his ability to possess a firearm. But Sutter overstates the effects on him of that restriction. For a Class A misdemeanor-assault that involved family violence, Texas prohibits possessing firearms in a case involving a person placed on community supervision for a period of five years following the date of the person's release from community supervision. Tex. Penal Code Ann. § 46.04(b)(2) (West 2011). There are also federal restrictions on possession, as set out in the United States Code, but we need not discuss how the restrictions apply to Sutter to address the issues the State

Sutter alleged that his attorney failed to tell him before he pleaded guilty that a conviction on a charge alleging he assaulted a family member could be used to enhance the penalty to which he would be exposed should the State, in the future, charge him with committing a similar crime. Third, Sutter complained his attorney never informed him that if he went into the military and was later honorably discharged, he would not be eligible to receive the preference otherwise available to him if he avoided being convicted in his criminal case. According to Sutter's application, if he had "been properly advised of the consequences of his plea, he would not have [pleaded] guilty."

The State responded to the application, arguing that because Sutter's complaints concerned matters that were collateral to his conviction, his application failed to state a valid claim for relief. And the State alleged that given the almost fifteen-year period since Sutter was convicted, the doctrine of laches barred Sutter's claims because the State would be at a disadvantage in proving Sutter's guilt given the fact the conviction occurred in 2003.

In July 2018, the habeas court conducted the first of two hearings on the merits of Sutter's application for relief. During the first hearing, Sutter's habeas counsel

---

has raised in its appeal. *See* 18 U.S.C.S. § 922(g)(9) (LEXIS through Pub. L. No. 116-47); Tex. R. App. P. 47.1.

advised the court Sutter could not recall meeting with his attorney before pleading guilty, no one discussed family violence "or anything along these lines[,]" and the facts involving the charge arose merely because Sutter "hit [his family member] in the back with the flat of his hand." The attorney who represented Sutter in 2018, however, had no personal knowledge of what Sutter and his attorney discussed in 2003, as the attorney who represents Sutter on his habeas case did not represent Sutter in 2003.

In the hearings, habeas counsel also argued an ineffective assistance of counsel claim. He suggested to the court that in 2003, Sutter's attorney was ineffective because he failed to fully inform Sutter about the consequences of his plea because he failed to advise Sutter (1) he could no longer possess a firearm if he pleaded guilty, (2) the State could use the conviction to enhance future charges if Sutter committed other similar crimes, and (3) a conviction on a charge of assaulting a family member could prevent Sutter from getting jobs in areas that he might decide to pursue.

At the conclusion of the first habeas hearing, the habeas court told the attorneys to provide the court with any additional evidence they wanted the court to consider. In response to the court's statements, Sutter's habeas counsel advised the court that he only intended to call one witness in the hearing—Sutter. The State's

attorney responded that it was not planning to call any witnesses. At that point, the habeas court informed the parties that it would consider Sutter's petition along with the attached exhibits "as a proffer of his circumstances and where [Sutter] is and what [Sutter] would do." The State did not object to the procedure that the court indicated it would follow to resolve Sutter's case.

The trial court conducted a second hearing on Sutter's application in August 2018. The parties presented no evidence in the hearing. Instead, they asked the court to consider several opinions from appellate courts addressing habeas claims. In the August hearing, the State's attorney argued Sutter failed to establish grounds on which he was entitled to any relief. The habeas court disagreed, explaining that after "[c]onsidering the situation, the current situation now and then, I'm going to grant [Sutter's] motion." When the State asked the habeas court to explain its ruling, the court stated "[i]t is an equitable - - it's really in the interest of justice . . . it's the right thing to do."

About three weeks later, the habeas court issued written findings and conclusions to explain its ruling. Among other things, the habeas court's findings state:

- A court-appointed attorney represented Sutter in his criminal case in 2003;

6

- The pleadings and documents associated with Sutter's plea do not reflect that Sutter knew that if he pleaded guilty, he would be exposed to a finding of family violence;

- The Marine Corps honorably discharged Sutter in 2011;

- Sutter is seeking the training to allow him to obtain work as a commercial airline pilot;

- In the first hearing on Sutter's petition for habeas relief, "[Sutter] made an unobjected to proffer stating that [he] had not been informed of the consequences of his plea[;]"

- Before Sutter pleaded guilty in 2003, his attorney conducted no pretrial investigation and advised him "his options were to join the military or plead guilty;"

- The habeas court took "notice of its file" during the first hearing that it conducted on Sutter's application for habeas relief;

- The defense attorney in Sutter's criminal case provide Sutter with ineffective assistance because the attorney failed to (1) investigate whether a sufficient basis in fact existed for the State's case, (2) inform Sutter about the consequences associated with a finding of family violence, (3) advise Sutter that the State could use his conviction to enhance the degree of the offense available on a future similar charge, and (4) advise Sutter there were options available to him other than the option the attorney recommended that Sutter join the military.

- Sutter was prejudiced based on the attorney's failure to represent Sutter properly because the regulations that currently govern those who seek to become commercial airlines pilots prevent Sutter form obtaining a commercial pilot's license; and

- Sutter's ability to obtain jobs is burdened by a conviction that prevents him from possessing firearms.

7

The habeas court reached the following conclusions:

- "[Sutter] is entitled to habeas corpus relief from the collateral consequences of his conviction in Cause No. 03-184189 in the interest of justice[;]"

- Sutter proved he is entitled to relief based on "his non[-]controverted sworn application for a writ[;]"

- No evidentiary hearing is required on Sutter's petition;

- Laches does not bar Sutter's claim for habeas relief;

- Defense counsel's errors affected the outcome of the proceedings; and

- But for the errors, Sutter would have "pursued a trial."

After the State appealed, the State filed a brief arguing that there is no competent evidence in the record to support the habeas court's findings. According to the State, habeas counsel provided the habeas court only with argument but no evidence to support a claim for habeas relief. The State suggests that the statements of habeas counsel cannot be considered evidence since the general rule is that unsworn statements made by attorneys are not evidence. According to the State, an attorney's statement "can be accepted as true only when [counsel's statements] pertain to matters within counsel's personal knowledge."

Next, the State argues that even if the statements of Sutter's habeas counsel are treated as evidence, his statements and Sutter's sworn pleadings do not establish

8

Sutter received ineffective assistance of counsel in 2003. For instance, the State argues the habeas court's finding is not firmly founded in the record since the attorney who represented Sutter in 2003 was never given the opportunity to respond to the complaints Sutter made claiming the attorney gave him insufficient advice.

The State makes three additional arguments. It suggests Sutter's right to counsel did not require Sutter's attorney to inform Sutter about the various consequences Sutter complained about in the application he filed for habeas relief. It argues that Sutter never presented any competent evidence proving that he would have rejected the plea bargain that he agreed to accept in 2003. Last, the State maintains the habeas court's failure to apply laches to Sutter's claim erred when it rejected the State's defense of laches in light of Sutter's fifteen-year delay in filing for habeas relief.

Standard of Review

Article 11.072 of the Code of Criminal Procedure allows a defendant convicted and sentenced to community supervision to challenge the legal validity of his conviction by filing a writ of habeas corpus.[7] That said, the habeas court does not enjoy unfettered discretion to set criminal convictions aside. For example, article 11.072 of the Code of Criminal Procedure requires the defendant's application to

_____

[7] Tex. Code Crim. Proc. Ann. art. 11.072, §§ 1, 2 (West 2015).

9

raise a challenge to the legal validity of the defendant's conviction or to the legal validity of a condition the trial court imposed on the defendant when it placed the defendant on community supervision.[8] And by statute, allegations in an application for habeas relief "not admitted by the [S]tate are considered to have been denied."[9] Thus, even though the State filed an answer that did not include a general denial, it did not admit the material allegations in Sutter's petition alleging that his attorney was ineffective. Finally, article 11.072 provides the State with the right to appeal from rulings that grant a defendant's application seeking habeas relief.[10]

In reviewing an appeal from a habeas court's ruling on an 11.072 writ, we give the habeas court almost total deference as to its findings of fact if its findings are supported by the record.[11] And when the habeas court has resolved the habeas proceedings based on a factual dispute turning on the habeas court's evaluation of the credibility and demeanor of witnesses, appellate courts will not overturn its ruling unless the State established that the habeas court abused its discretion in

---

[8] *Id.* § 2(b).

[9] *Id.* § 5(e) (West 2015).

[10] *Id.* § 8.

[11] *See Ex parte Bowman*, 533 S.W.3d 337, 354 (Tex. Crim. App. 2017) (citing *State v. Guerrero*, 400 S.W.3d 576, 583 (Tex. Crim. App. 2013)).

reaching its findings.[12] "But, if the resolution of the ultimate question turns only on the application of legal standards, we review those determinations de novo."[13]

In the habeas court, the "applicant bears the burden of proving, by a preponderance of the evidence, the facts that would entitle him to relief."[14] Among other things, Sutter claimed his attorney in 2003 failed to conduct a reasonable investigation before recommending to Sutter that he plead guilty. In its appeal, the State challenges the findings the trial court made on both evidentiary and legal grounds. In a habeas proceeding, the petitioner bears the burden of proving (1) his attorney's advice about the plea offer did not fall within the wide range of competence demanded of attorneys in criminal cases, and (2) his attorney's errors affected the outcome of the process that resulted in the defendant's plea.[15] As the applicant seeking habeas relief, Sutter had the burden to prove that a reasonable

---

[12] *Id.* (citing *Ex parte Aguilar*, 501 S.W.3d 176, 178 (Tex. App.—Houston [1st Dist.] 2016, no pet.)).

[13] *Id.*

[14] *Ex parte Richardson*, 70 S.W.3d 865, 870 (Tex. Crim. App. 2002); *Ex parte Thomas*, 906 S.W.2d 22, 24 (Tex. Crim. App. 1995).

[15] *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985); *Ex parte Torres*, 483 S.W.3d 35, 43 (Tex. Crim. App. 2016); *Ex parte Harrington*, 310 S.W.3d 452, 458 (Tex. Crim. App. 2010).

probability exists that, but for his attorney's errors, he would not have accepted the State's plea offer and insisted instead on going to trial.[16]

Under settled standards that apply to claims of ineffective assistance of counsel, the defendant must prove the attorney who represented him performed deficiently and the defendant suffered prejudice as a result.[17] Courts must measure whether the attorney was ineffective using an objective standard of reasonableness, which turns on whether the attorney represented the defendant in a manner that fell below the prevailing professional norms.[18] Different attorneys can reasonably make different choices in handling a defendant's case and the attorney's and the client's choices in a particular case usually involve matters of trial strategy.[19] Consequently, the standard by which an attorney's representation is measured recognizes the wide range of reasonable professional assistance that exists, so appellate courts indulge in

[16] *Id.*

[17] *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Bowman*, 533 S.W.3d at 349; *Torres*, 483 S.W.3d at 43.

[18] *Strickland*, 466 U.S. at 687-88; *Bowman*, 533 S.W.3d at 349; *Torres*, 483 S.W.3d at 43.

[19] *Nava v. State*, 415 S.W.3d 289, 307-08 (Tex. Crim. App. 2013); *see also Strickland*, 466 U.S. at 689; *Bowman*, 533 S.W.3d at 349.

a strong presumption that favors the attorney whose advice is the subject of a defendant's ineffective assistance claim.[20]

The evidence needed to prove an ineffective assistance claim must be based on facts firmly founded in the record from the proceeding in which the claim is made.[21] The defendant who claims to have been the victim of his attorney's ineffective assistance has the burden to create that record and to show that, but for his attorney's giving him ineffective assistance, he would not have pleaded guilty.[22] The defendant must prove both ineffective assistance and that, rather than pleading guilty, he would have chosen to face trial.[23]

Generally, ineffective assistance of counsel claims like Sutter's are reviewed using the standard of review that applies to mixed questions of law and fact.[24] But in Sutter's case, no witnesses testified in the hearings the habeas court conducted on

---

[20] *Id.*

[21] *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999); *see also Menefield v. State*, 363 S.W.3d 591, 592 (Tex. Crim. App. 2012).

[22] *Strickland*, 466 U.S. at 694; *Torres*, 483 S.W.3d at 43; *Nava*, 415 S.W.3d at 308.

[23] *Strickland*, 466 U.S. at 700; *Perez v. State*, 310 S.W.3d 890, 893 (Tex. Crim. App. 2010).

[24] *See Absalon v. State,* 460 S.W.3d 158, 162 (Tex. 2015).

his application. As a result, the habeas court's findings in Sutter's case do not turn on issues of credibility or demeanor.[25] For that reason, a de novo standard of review applies to the State's complaints asserting the trial court erred when it ruled in Sutter's favor on his ineffective assistance of counsel claims. [26]

## The Challenged Findings

*Interest of Justice*

In large part, the habeas court's finding in Sutter's favor based on the interest of justice is based on Sutter's sworn pleadings. But a habeas petitioner's sworn pleadings provide insufficient support for a court to grant a habeas applicant's request for relief.[27] Here, the habeas court's ruling appears to rest on that habeas court's view that it was not fair to burden a man who, when he was convicted, was not yet eighteen since after he was convicted he had served in the military and been honorably discharged. The habeas court also viewed it as unfair that the conviction was interfering with Sutter's desire to pursue a career as a commercial pilot. Yet the Legislature has not given habeas courts a carte blanche that allows them to set aside convictions based on a court's "sympathy, an inarticulate hunch, or simply because

---

[25] *Id.*

[26] *See Ex parte Beck*, 541 S.W.3d 846, 852 (Tex. Crim. App. 2017).

[27] *Guerrero*, 400 S.W.3d at 583.

14

[the court] believes that the defendant is innocent or 'received a raw deal.'"[28] And the statements by Sutter's attorney in the two hearings in 2018 also do not support the habeas court's ruling because Sutter's habeas counsel was not the attorney who represented Sutter in 2003.

We hold the habeas court did not have the authority to use its equitable power to set aside Sutter's conviction in the interest of justice.

*Failure to Investigate*

The habeas court also found that Sutter's attorney in 2003 failed to conduct a reasonable investigation before advising Sutter to plead guilty. But Sutter's application for relief does not allege a failure to investigate claim. And in the two hearings the habeas court conducted on Sutter's application, he provided the habeas court with no evidence to show what Sutter's attorney did (or did not do) to investigate his case. In this case, the only possible reference to a failure to investigate claim occurred when habeas counsel presented the following argument:

> [Sutter] has no recollection of ever meeting with [defense counsel] in the office. No one discussed family violence or anything along these lines. The allegation was that he hit [a family member] in the back with the flat of the hand.
>
> [Defense counsel in Sutter's criminal case] never discussed it with [the family member Sutter allegedly assaulted]. They get along

---

[28] *State v. Herndon*, 215 S.W.3d 901, 907 (Tex. Crim. App. 2007).

15

fine. There's no bodily injury to really note in this case. Basically[,] it was a family squabble.

Thus, while habeas counsel's argument is in the record, he never argued the omission he claimed occurred violated Sutter's rights under the Sixth Amendment.[29] And even had he made such an argument, habeas counsel's statements about what Sutter's attorney failed to do in 2003 were not evidence proving the attorney did not investigate Sutter's case.[30]

In the second hearing, Sutter's habeas counsel did not argue that Sutter's attorney in 2003 failed to investigate his case. And habeas counsel never explained why Sutter's attorney could not have learned the essential facts that led the State to charge Sutter with assaulting a family member by reading the police report, any written statements the police obtained, or by talking to the family members—including Sutter—who were witnesses to the assault.

---

[29] U.S. CONST. amend. VI (providing that in all criminal prosecutions, the accused shall enjoy the assistance of counsel for his defense).

[30] *Ex parte Torres*, 483 S.W.3d at 49 (explaining that when an attorney's statements are not based on personal knowledge, they "are not considered competent evidence to support a defendant's writ clams"); *Guerrero*, 400 S.W.3d at 584 (concluding that "[c]counsel's statements [in an 11.072 writ proceeding] were not competent evidence").

By statute, article 11.072 authorizes a habeas courts to grant a defendant's application for the "relief sought in the application."[31] In this case, the record before the habeas court includes the admonishments Sutter signed in 2003 before he pleaded guilty. In them, Sutter represents he was "properly represented," he had "fully discussed the case with [his] attorney," his plea was free and voluntary, "[he] committed the offense as alleged[,] and that [he was] guilty as charged."

We conclude the habeas court erred when it granted Sutter's application on a claim he never pleaded. And we conclude the evidence in the record fails to support Sutter's failure to investigate claim.

*Collateral Consequences of a Plea*

Sutter also complained about several of the consequences that resulted from his 2003 conviction, claiming he would not have pleaded guilty had he known about these matters at that time. According to Sutter, the attorney who represented him in 2003 should have told him before he accepted the plea bargain the State offered him that a conviction that included a finding of family violence (1) would prevent Sutter

---

[31] Tex. Code Crim. Proc. Ann. art. 11.072, § 6 (West 2015); *see also Ex parte Perez*, 536 S.W.3d 877, 880 (Tex. App.—Houston [1st Dist.] 2017, no pet.); *Ex parte Cook*, No. 02-18-00537-CR, 2019 Tex. App. LEXIS 4522, at *7-8 (Tex. App.—Fort Worth May 31, 2019, no pet.) (mem. op., not designated for publication); *Ex parte Calderon*, No. 05-18-01292-CR, 2019 Tex. App. LEXIS 1329, at *6 (Tex. App.—Dallas Feb. 21, 2019, pet. ref'd) (mem. op., not designated for publication).

from possessing a firearm, (2) negatively affect his ability to gain employment, and (3) could be used by the State to enhance the indictments if charged with other similar crimes.

But the Sixth Amendment right to counsel does not require the attorney who represents a criminal defendant to foresee all of the possible future consequences that may result from a conviction since it assures those accused only of reasonable professional assistance.[32] For example, an attorney's obligation to provide his client with reasonable professional assistance does not require the attorney to inform the defendant he will no longer be able to possess firearms or that his conviction could adversely impact his ability to obtain work.[33] The types of complaints Sutter complained about in his application, even if true, do not show that Sutter was deprived of reasonable profession assistance in violation of his Sixth Amendment rights.[34]

---

[32] *Strickland*, 466 U.S. at 690 (explaining that "a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct").

[33] *Mitschke v. State*, 129 S.W.3d 130, 135 (Tex. Crim. App. 2004) (noting that "there are a number of direct consequences of a plea of guilty, such as the loss for a period of years of the right to vote and the right to possess firearms, ineligibility for certain professional licenses, etc., that do not necessarily render an otherwise voluntary plea involuntary" since they are the non-punitive consequences of the defendant's conviction).

There is also no testimony in the record to show that Sutter's attorney violated the reasonable standard of care that applied to attorneys representing criminal defendants in 2003.[35] Consequently, the trial court's findings relating to the attorney who represented Sutter in 2003 are not firmly founded in the record.[36] On this record,

---

[34] *Ex parte Morrow*, 952 S.W.2d 530, 536 (Tex. Crim. App. 1997) (suggesting that the defendant's attorney's failure to advise the defendant that his conviction might be used to enhance the defendant's punishment for a future offense does not implicate the defendant's right to counsel under the Sixth Amendment); *State v. Collazo*, 264 S.W.3d 121, 128 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd) (the fact that defendant was unaware his conviction could prevent him from getting a peace officer's license did not undermine the voluntariness of his plea); *Ex parte Dumitru*, 850 S.W.2d 243 (Tex. App.—Houston [1st Dist.] 1993, no pet.) (defendant's plea was not involuntary just because he did not know the sentence might be used in the future to enhance the penalty range if he committed another crime); *Ex parte Nelson*, No. 01-14-00924-CR, 2015 Tex. App. LEXIS 6680, at *15 (Tex. App.—Houston [1st Dist.] June 30, 2015, no pet.) (mem. op., not designated for publication) (concluding the defendant's employment difficulties following his conviction "are not a direct consequence of his plea"); *Ex parte Drinkard*, No. 02-11-00369-CR, 2012 Tex. App. LEXIS 6623, at *5 (Tex. App.—Fort Worth Aug. 9, 2012, no pet.) (mem. op., not designated for publication) (explaining the defendant does not have to know the crime to which he pleads guilty can be used to enhance a possible future sentence before he can enter into a knowing and voluntary plea); *Morales v. State*, No. 07-10-0351-CR, 2011 Tex. App. LEXIS 9736, at *10 (Tex. App.—Amarillo Dec. 13, 2011, no pet.) (mem. op., not designated for publication) ("Ignorance of a collateral consequence does not render a plea involuntary.").

[35] *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002) (explaining that the defendant "must prove, by a preponderance of the evidence, that his counsel's representation fell below the objective standard of professional norms").

[36] *See Thompson*, 9 S.W.3d at 813 ("Any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness."); *Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App.

19

we agree that Sutter's complaints about his attorney all concern matters that did not implicate his Sixth Amendment rights.[37]

We conclude the record contains no evidence supporting the habeas court's findings on ineffective assistance of counsel.

Conclusion

Sutter failed to create a record proving he was entitled to a favorable ruling on his application for habeas relief. We hold the habeas court erred by setting aside Sutter's conviction in Cause Number 03-184189. We sustain the State's first issue. We reverse the trial court's order in Cause Number 18-30648 granting Sutter's application, we reinstate the judgment in Cause Number 03-184189, and we render judgment denying Sutter's application for habeas relief.[38]

---

1994) (explaining that the party alleging ineffective assistance of counsel has burden to develop facts and details necessary to support the claim).

[37] *See Chaidez v. United States*, 568 U.S. 342, 356 (2013) (noting that the Supreme Court abrogated the collateral consequences rule only in the context of deportations). No one has claimed that Sutter's conviction subjected Sutter to deportation.

[38] Because Sutter failed to establish his counsel's conduct violated his rights under the Sixth Amendment, we need not address whether the evidence in the record also fails to establish that he suffered any prejudice. *Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009). We also do not address the State's second issue arguing the habeas court erred when it failed to sustain its claim of laches given our resolution of the State's first issue. *See* Tex. R. App. P. 47.1.

REVERSED AND RENDERED.


_____
HOLLIS HORTON
Justice


Submitted on January 31, 2019
Opinion Delivered September 25, 2019
Do Not Publish

Before McKeithen, C.J., Kreger and Horton, JJ.

21